Paxos *v.* Jarka Corporation, Appellant.

Argued January 3, 1934. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. C. Henry,* of *Swartz, Campbell & Henry,* for appellant.

*Samuel H. Coplin,* with him *George H. Detweiler,* for appellees.

OPINION BY MR. JUSTICE KEPHART, January 30, 1934:
Nick Paxos, appellee, was engaged in the business of cleaning tanks in vessels used in the transportation of fuel oil or other liquid cargoes. Thomas Strong, one of his employees, was the foreman of a gang of workers. While Strong, in the course of employment, was about to descend into a fuel tank on appellant's ship, a plank, part of a hatch covering on the deck above the tank open-

ing, was dislodged from its place by appellant's employees who were at that time, by the use of winches and booms, loading the ship. The plank fell and struck Strong on the back, seriously injuring him.

This action was commenced under an act of congress by the employer "in his own right and to the use of Thomas Strong, as their interests may appear." After the trial, but before appeal, the American Employers' Insurance Company, petitioned to intervene as insurance carrier. This the court below permitted after the appeal to this court.

In determining whether this action was properly instituted by the employer, consideration must be given the acts of congress which control the substantive rights involved. Before this action was started, an award had been made to the employee, Strong, under the Federal Longshoremen's and Harbor Workers' Compensation Act, March 4, 1927, c. 509, 44 Stat. 1924. As a result, the employer was substituted as "assignee," to the rights of the employee to the extent of the compensation payments; he thereby acquired the legal rights of the employee for redress against the tort-feasor. "The Compensation Act permits him to enforce them in his own name":* Ætna Life Ins. Co. v. Moses, 287 U. S. 530.

---

* "Sec. 33. (b) Acceptance of such compensation shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person,......

"(c) Such employer on account of such assignment may either institute proceedings for the recovery of such damages or any compromise with such third person either without or after instituting such proceeding.

"(d) Any amount recovered by such employer......shall be distributed as follows:

"(1) The employer shall retain an amount equal to—

"(A) The expenses...... (B) The cost of all benefits...... (C) All amounts paid as compensation, and the present value of all amounts......

"(2) The employer shall pay any excess to the person entitled to compensation or to the representative."

Under Ætna Life Ins. Co. v. Moses, supra, appellant's liability is measured by the injury caused the employee. It can therefore make no difference to appellant whether the amount recovered from it goes to the injured person or to his employer or both, as long as no additional liability is imposed. Plaintiff Strong's substantive right was controlled by the federal law, which allocates a portion of that "right" to parties who share in the relief of the injury.

Admittedly, practice in the federal courts does not control in the courts of this State, but we will enforce the substantive rights given all parties here of record by the federal statute. The situation is analogous to the enforcement of an employee's right or claim for injury in an action for damages under the Federal Employees Liability Act, where we have held that when congress acts in a field where its jurisdiction is concurrent with that of a state, its laws are supreme, state laws are superseded and state courts enforce the federal acts as though they were state laws: Hogarty v. P. & R. Ry. Co., 245 Pa. 443; Idem., 255 Pa. 236. Congress by the Longshoremen's Act has covered the field of the recovery of damages for injuries occurring during maritime employment, though occasioned by a person other than an employer as that term is understood. The right to recover in a state court for such injury is under the Longshoremen's Act; it supersedes state laws, and gives a right of action to the employer (Ætna Life Ins. Co. v. Moses, supra) which our courts must enforce. See also Dickinson, Admrx., v. Jones, 309 Pa. 256.

Moreover, our procedure is much the same in cases of like nature. The name of the proper plaintiff is upon the record; the manner in which the name of any one beneficially interested may appear, is unimportant: Methodist Episcopal Church of Franklin v. Equitable Surety Co., 269 Pa. 411; Hewitt, Receiver, v. Democratic Publishing Co., 271 Pa. 546; Mangan v. Schuylkill Co., 273 Pa. 310; Gentile v. P. & R. Ry. Co., 274 Pa. 335.

Mere objection to the form of stating plaintiffs should not delay litigation. We said in Mangan v. Schuylkill Co., supra, page 313: "......all parties in interest having been brought upon the record, they can be placed by the court below in whatever position would best and most practically work out the ends of justice......that which might have been done at trial, can and will be done here......; we accordingly treat the suit as though instituted in the manner above indicated." See also Barnhill v. Haigh, 53 Pa. 165; Patton v. Pittsburgh, Cincinnati & St. Louis Ry. Co., 96 Pa. 169.

There is no merit in appellant's contention that the plaintiff must prove the payment of compensation under the federal act. Such payment does not affect the degree or amount of defendant's liability. It is liable for the injury caused by its negligence, and will be fully protected against a double recovery by the form of this action, in which the employee is named as a use-plaintiff. Defendant cannot prejudice employee Strong's right to recover from a third party by parading before the jury an array of figures paid to him by his employer under the Compensation Act. The court below will protect the employee's right by admitting testimony only to show "acceptance of compensation." Here, the record of a proceeding before the federal commission as to such acceptance was offered. It was ample. We have held it reversible error to admit evidence of compensation payments in an action against a third person to recover damages for children whose father had been killed through defendant's negligence: Lengle v. North Lebanon Twp., 274 Pa. 51.

The court below over objection admitted records of the hospital where Strong had been a patient, on the theory that they came within the same class as records kept in the usual and ordinary course of business, trade, or similar operations. Had there been no other evidence, it is apparent that were these records admissible and not impeached, plaintiff's case was made out. Therefore, the

substance and background of these records must be carefully analyzed to determine the question of their admissibility.

To sustain the admission of entries such as these, they must pass the rules which guard the admission in evidence of declarations, book accounts and records though offending the letter of the rule against hearsay. Coming from this particular institution, the mere existence of these records might be circumstantially probative of their truth, but that alone is insufficient. To avoid the hearsay rule three probative elements must be present. We may admit from an examination of these records that they satisfy the first requirement: they were made cotemporaneously with the acts which they purport to relate; there is no doubt about the way these records are made up. The fact that each case bears its own number, makes it difficult, if not impossible, to invent such a record. Its individual and mechanical integrity may be guaranteed by its form, the manner of its keeping and the institution from which it came. Secondly, at the time of making, it was impossible to anticipate reasons which might subsequently arise for making a false entry in the original. No motive to falsify the records is suggested by their background. Undoubtedly, in an institution of the character of this hospital, there is an utter lack of all motive to misrepresent.

The third and primary, probative element of this, as of all evidence, however, is the *knowledge* of the person responsible for the statements; by that knowledge the truth of the facts he narrates may be tested. Particularly is this so where the existence or truth of a fact stated depends not on the result of mere occular observation but is the product of the application of scientific principles to certain observed conditions. In other words, such evidence must be the opinion of a person so qualified as an expert in a field as to be capable of drawing a sound conclusion concerning a condition not vis-

ible but reflected circumstantially by the existence of other visible and known symptoms.

We cannot assume that the persons who were responsible for the contents of the hospital records here involved possessed that knowledge in a matter dependent on a prolonged study of the science of medicine and surgery, a knowledge acquired only after much education and practice. As any practical experience in trial work reveals, the testimony of a doctor as to the extent of injuries and their effects is primarily opinion evidence at best, and, where the person stating the opinion is present in court, is subjected to the severest of examinations to test its strength. The qualifications of the author can be looked into only in cross-examination. An opinion expressed in hospital records [were they to be admitted without the presence of the physician] is subject to no such searching inquiry as to accuracy, soundness, and veracity. Hence the danger in admitting them is very great. However admirable, whatever the character and reputation of the institution from which records come, to deny a defendant the opportunity to test the correctness of the diagnosis and ascertain the qualifications of the assertor, particularly where the records were not made by the physician in charge of the case, is to deny it a substantial right. Take for illustration the present record: the payment clerk from the hospital testified that he has charge of all such records and was acquainted with the handwritings of the doctors, and that the writing on the report was theirs. These reports stated that Strong was suffering from a fracture of the fifth lumbar vertebra, sustained while working at Pier No. 34, caused by a hatch covering falling on the small of his back. There was also a report made up from an X-ray negative supposed to present a picture of Strong's back, and the written report stated that the X-ray photograph disclosed a fractured vertebra. The reports, aside from that of the doctor who made the examination of the X-ray negative, were not reports of

physicians admitted to practice in the State of Pennsylvania, but were reports of internes or students only, none of whom were, at the time they made the reports, qualified as experts in any court, although since that time they may have acquired capacity to so testify. There is not a scintilla of evidence to indicate that the records were made at the direction of the doctor in charge of the case, Dr. Mitchell, one well qualified to have asserted what was there recorded, and it nowhere appears that the Dr. Wilson mentioned was qualified in any way to read an X-ray negative, or that he was even qualified as a physician.

From a consideration of the character and quality of the testimony before the jury, it can readily be seen how vitally essential it was that the knowledge of all of these persons who collaborated in making the report should have been shown. It was most destructive to defendant's case, who was without opportunity to reveal the source of this evidence, to cross-examine the doctors, internes and students, or others, and thus to investigate the truth of the primary statements contained in the records placed in evidence. In addition, before such hearsay evidence can be admitted, it must appear that it is necessary to rely on it. In injury cases, the best evidence of the specific injury, its extent and effects, is the testimony of the physicians who cared for the patient. Although the doctor in charge of use-plaintiff might not have been able to appear in court to testify, his testimony and that of others outside the jurisdiction could have been taken through a commission. In this busy day, doctors who are called to court, are given priority as witnesses; courts usually do, and they should, call them regardless of order and permit them to testify so they may return to patients awaiting them. The court below erred in the admission of this evidence.

We do not wish to be understood as holding that in no case can hospital records be produced, but, *except in extraordinary cases and then only where the three proba-*

*tive elements are present,* such records should not be received in evidence. This court in Com. v. Del Giorno, 303 Pa. 509, 515, said: "Such records are sometimes received in evidence [see 3 Wigmore on Evidence (2d ed.), section 1707], but are not generally competent: Harkness v. Swissvale Boro., 238 Pa. 544." See Cashin v. N. Y., N. H. & H. Ry. Co., 185 Mass. 543, 70 N. E. 930; Delaney v. Framingham G. F. & P. Co., 202 Mass. 359, 88 N. E. 773; Price v. Standard L. & A. Ins. Co., 95 N. W. [Minn.] 1118; State v. Tarwater, 239 S. W. [Mo.] 480.

The judgment must be reversed and a new trial had. It is so ordered.