Johnson Appeal.

Argued November 8, 1971.  Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Martha K. Treese,* Assistant Defender, with her *Thomas C. Carroll,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*James T. Ranney,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, December 20, 1971:

On October 28, 1969, appellant was adjudicated delinquent on the ground that he had participated in a gang rape and was committed to the Glen Mills School by the Philadelphia Court of Common Pleas. The Superior Court affirmed the adjudication by a per curiam order, and this Court granted allocatur.

Appellant contends before this Court that there was insufficient evidence to support the adjudication of delinquency. Appellant also alleges that the hearing judge erred by reading, before the adjudication of delinquency, a report of appellant's detention hearing which noted appellant's prior arrest for sex offense. After a careful examination of the record, we reject both of appellant's contentions.

In reviewing the sufficiency of the evidence to support the adjudication below, we recognize that the Due Process Clause of the United States Constitution requires proof "beyond a reasonable doubt" at the adjudication stage when a juvenile is charged with an act which would constitute a crime if committed by an adult. *In Re Winship,* 397 U.S. 358, 90 S. Ct. 1068 (1970); *Terry Appeal,* 438 Pa. 339, 347, 265 A. 2d 350, 354 (1970), aff'd, 403 U.S. 528, 91 S. Ct. 1976 (1971). Additionally, we recognize that in reviewing the sufficiency of the evidence to support the adjudication of

delinquency, just as in reviewing the sufficiency of the evidence to sustain a conviction, though we review the entire record, we must view the evidence in the light most favorable to the Commonwealth. See, e.g., *Commonwealth v. Lawrence*, 428 Pa. 188, 189, 236 A. 2d 768, 769 (1968).

The complainant in this case, who was fourteen years old at the time of the alleged rape, testified as follows: On the evening of May 14, 1969, at about 8:00 p.m., on Bonsall Street in Philadelphia, complainant was introduced by two girl companions to a group of boys. One of the boys was introduced to her as Johnny Johnson. After the introduction, some of the boys obtained a bottle of wine and went into an old house on Bonsall Street.

Shortly thereafter, as complainant was standing near an alley which led to the back of the old house, John Johnson and another boy grabbed her as she began to run across the street. With John Johnson holding her by both wrists, the two boys carried complainant through the alley to a back door. Despite complainant's demands that the boys let her go, she was grabbed again by John Johnson and dragged into the house.

Once inside the house, the two boys pushed complainant up the stairs to the third floor of the house. At the top of the stairs, complainant attempted to get back down, but her way was blocked by the other boy. At this point one of the boys other than John Johnson ripped the bottom of complainant's dress off. Complainant was then taken into a back room where some members of the group ripped off her remaining clothes.*

---

* At trial a Philadelphia police detective testified that torn pieces of a dress were recovered from the house on Bonsall Street. The pieces of the dress were admitted into evidence. The detective testified that complainant identified the pieces of the dress as part of the dress which she had worn into the house. Defense counsel did not object to the hearsay character of the detective's testimony.

Complainant testified that she was "absolutely sure" that John Johnson had intercourse with her and testified that he was the first of approximately thirteen or fourteen boys that had intercourse with her against her will that evening. She testified that she tried to get away from the boys, but that some of them were holding her down. She testified that John Johnson told her to hold still and promised her one of his sister's dresses if she stopped fighting and trying to get away. She testified that she could see John Johnson inside the house by means of the light shining through the window of the house.

After the gang rape was concluded, complainant put on a dress which she testified John Johnson had left for her. By the time she reached the first floor of the house, the police had arrived and she told them what had happened. Other police officers who arrived on the scene observed a number of boys running out the back of the house, circled the block, and picked up Johnny Johnson and another boy who were "sort of running".

Despite the testimony of the complainant, which was unshaken on cross-examination, and despite the long-standing Pennsylvania rule that the testimony of one witness can be sufficient to sustain a conviction of rape, *Commonwealth v. Ebert,* 146 Pa. Superior Ct. 362, 22 A. 2d 610 (1941), appellant, citing *Commonwealth v. Oyler,* 130 Pa. Superior Ct. 405, 407, 197 Atl. 508, 509 (1938), contends that complainant's testimony was so "indefinite, contradictory or unreliable" that it cannot support a conviction. Specifically, appellant questions complainant's testimony as to the forcible character of the attack and her identification of John Johnson.

In questioning complainant's testimony as to the forcible character of the attack, appellant relies on complainant's testimony that she did not scream or call for help during the attack, despite the fact that her two girl companions were on the second floor of the house

at the time. Though failure to make an outcry may tend to show consent, *Commonwealth v. Goodman*, 182 Pa. Superior Ct. 205, 211, 126 A. 2d 763, 765-66 (1956), outcry need not be proved to sustain a finding that a rape occurred. *Commonwealth v. Hornberger*, 199 Pa. Superior Ct. 174, 176, 184 A. 2d 276, 278 (1962). Complainant's failure to call for help was only one factor for the judge to weigh along with all the other evidence.

Appellant's questioning of the definiteness, consistency and reliability of complainant's identification testimony is more troublesome. Complainant could remember the names of none of her attackers except that of John Johnson, and one of the reasons that appellant's name became fixed in her mind was that while she was being attacked, several of her assailants stated that they were "not" John Johnson. Additionally, complainant could remember nothing specific about petitioner's appearance on the night in question, despite the fact that three witnesses, including one policeman, testified that petitioner had his arm in a cast on the night of the alleged rape. In fact, complainant testified that John Johnson used both hands to carry her through the alley to the back of the house. Nevertheless, keeping in mind the trauma likely to be generated by the gang rape and by recounting the rape in open court, we cannot say as a matter of law that the hearing judge could not have found beyond a reasonable doubt that John Johnson raped complainant.

Finally, we must consider appellant's contention that the hearing judge erred by reading, before the adjudication of delinquency, a report of appellant's detention hearing which described appellant's prior arrest for a sex offense. We have previously held that a trial judge, sitting without a jury, may not consider a defendant's prior criminal record in determining whether defendant is guilty beyond a reasonable doubt of the offense for which he is presently charged. *Common-*

*wealth v. Oglesby,* 438 Pa. 91, 263 A. 2d 419 (1970). We also feel that there is little if any reason for relaxing, in non-jury criminal trials, the exclusionary rule that is applied to evidence of defendant's prior criminal record when a jury is the trier of fact. See Levin and Cohen, The Exclusionary Rule in Nonjury Criminal Cases, 119 U. Pa. L. Rev. 905 (1971).

However, on this record we are unable to conclude that the hearing judge was aware of appellant's prior arrest before the adjudication of delinquency. While it is clear that the hearing judge, before the adjudication of delinquency, read *part* of the detention report which noted appellant's prior arrest, it is not clear that the judge read *the specific portion* of the report which noted appellant's prior arrest. In fact, the hearing judge explicitly stated in his opinion that he had "no recollection" of having done so.

Accordingly, the order of the Superior Court is affirmed.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.