364 A.2d 477

**COMMONWEALTH of Pennsylvania**

**v.**

**Tyrone GRIFFIN, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

116

Warren R. Hamilton (Court Appointed), Philadelphia, for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

The defendant-appellant Tyrone Griffin was arrested on March 28, 1971, on charges of rape, aggravated robbery, and burglary. His first trial began on June 6, 1974, and ended in a mistrial when the jury was unable to reach a verdict. Appellant's second trial began on February 11, 1975. At the conclusion of the second trial, the jury reached a verdict of guilty on the charges of aggravated robbery and burglary and not guilty on the charge of rape. We affirm the judgment of sentence of the lower court.

■ Appellant first contends that his right to a speedy trial was violated. Well over three years elapsed from the arrest to the time of appellant's first trial. The parties stipulated in the court below that this time may be broken down as follows: ninety-one weeks of delay were caused by appellant's privately retained counsel's failure to appear; forty-two weeks were caused by the unavailability of a courtroom; thirty-nine weeks were caused by the Commonwealth's failure to have witnesses available; and one week was caused by appellant's hospitalization. The lower court judge, Judge William Porter of the Court of Common Pleas of Philadelphia County, noted in his opinion that:

> "While the handling of this case both by prosecution and defense was not a model of criminal justice, I did not find it a deprivation of speedy trial."

We agree. This case arose prior to the effective date of Pa.R.Crim.P. 1100. Applying the balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), it is evident that appellant's right to a speedy trial was not violated.

First, most of the delay was caused by appellant's counsel. Second, the fact that appellant did not file his motion to quash until two and one-half years after the arrest indicates that appellant acceded to the delay. Fi-

nally, appellant has shown no specific prejudice that can be attributed to the delay.

The second and third issues raised by appellant are interrelated. At appellant's first trial, the victim-complainant testified against him. In the interval between the first trial and the second, the complainant moved to California, and, despite requests from the district attorney's office, she declined to return for the second trial. The district attorney's office also complied in all respects with the procedure provided in the "Uniform Act to Secure the Attendance of Witnesses From Within or Without a State in Criminal Proceedings," Act of June 23, 1941, P.L. 147, § 1 (19 P.S. § 622.1) *et seq.*, and *West's Ann.Penal Code* § 1334 *et seq.* However, a California court, on motion of the complainant, quashed the request, finding that further testimony in the matter would be "detrimental to her health."

Unable to secure the presence of the complainant at the second trial, the Commonwealth read her testimony that had been given at the first trial. Appellant contends that this procedure violated the hearsay rule, and, in the alternative, violated his sixth amendment right to confront the witnesses against him.

The Act of May 23, 1887, P.L. 158, § 3 (19 P.S. § 582), provides:

"Whenever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall

be competent evidence upon a subsequent trial of the same criminal issue   .   .   .."

It is clear that if the Commonwealth's use of the complainant's prior testimony was proper under the statute, then the evidence was not inadmissible hearsay nor did it violate the appellant's Sixth Amendment right.   In order for the Commonwealth to take advantage of the statute, the Commonwealth must show that the witness was unavailable and that a good faith effort was made to obtain the witness' presence.   *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ; *Commonwealth v. Jackson*, 463 Pa. 301, 344 A.2d 842 (1975); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975) ; *Commonwealth v. Faison*, 452 Pa. 137, 305 A.2d 44 (1973).

In this case, the Commonwealth requested the presence of the complainant and instituted legal proceedings to compel her attendance.   Certainly these efforts meet the test of good faith no matter how carefully they are tested.   The witness was out of the jurisdiction and could not be effectively served with a subpoena.   The failure of the Commonwealth's efforts to obtain her presence indicates that the witness was unavailable.  Therefore, the admission of the witness' prior testimony was proper.

The judgment of sentence of the lower court is affirmed.

SPAETH, J., files a concurring opinion.

WATKINS, President Judge, files a dissenting opinion in which CERCONE, J., joins.

HOFFMAN, J., files a dissenting opinion.

SPAETH, Judge (concurring) :

There are three possible views of the impact of the confrontation clause on the admissibility of hearsay evidence.

One view is that the clause has no impact. In Wigmore's words:

> The Constitution does not prescribe what kinds of testimonial statements (dying declarations, or the like) shall be given infra-judicially,—this depends on the laws of Evidence for the time being,—but only what mode of procedure shall be followed—i. e. a cross-examining procedure—in the case of such testimony as is required by the ordinary Law of Evidence to be given infra-judicially.

> 5 Wigmore, Evidence § 1397, at 131 (3d ed.1940) (footnote omitted).

A second view is that the clause was intended, or should now be regarded, as a prohibition on the use of any hearsay.

So far neither of these two views has gained judicial assent, although Mr. Justice Harlan came to adopt the first, and maintained that "my Brother MARSHALL is being driven [toward the second], although he does not quite yet embrace it." *Dutton v. Evans*, 400 U.S. 74, 93, 95, 91 S.Ct. 210, 223, 27 L.Ed.2d 213 (1970) (concurring opinion).

The third view is that some hearsay is prohibited by the clause, but some is not. Perhaps the most frequently cited expression of this view is Mr. Justice White's for the majority of the Court in *California v. Green*, 399 U. S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970) :

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Con-

frontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied [footnote omitted].

*And see Commonwealth v. Thomas,* 443 Pa. 234, 279 A. 2d 20 (1971).

Although this third view at present prevails, there has been no agreement on a unifying principle by which one may determine when the confrontation clause does overlap the rules against hearsay and when it does not. So far the Court has proceeded on a case by case basis, deliberately refraining from the formulation of any such principle. For example, in *California v. Green, supra* 399 U.S. at 162, 90 S.Ct. at 1937, the Court said: "We have no occasion in the present case to map out a theory of the Confrontation Clause that would determine the validity of all such hearsay 'exceptions' permitting the introduction of an absent declarant's statements." And in *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970), the Court said: "We confine ourselves . . . to deciding the case before us." No doubt there is much in favor of this way of proceeding, but it does have its difficulties, which are illustrated by the present case.

If in examining a given case one emphasizes the importance to the defendant of cross-examination, one is likely to conclude that the confrontation clause has been

violated. For example, in *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the prosecution introduced at trial the transcript of a crucial witness's testimony from a preliminary hearing. The witness himself, one Phillips, had left the jurisdiction and did not appear at trial. The Court held that "[b]ecause the transcript of Phillips' statement . . . had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips," *id.* at 407, 85 S.Ct. at 1070, the introduction of the transcript was in violation of the confrontation clause. Similarly, in *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Court reversed a conviction when the prosecution read into the record an alleged confession of the defendant's supposed accomplice, one Loyd, who refused to testify on self-incrimination grounds. "In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. . . ." *Id.* at 419, 85 S.Ct. at 1077. And in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court found a violation of the confrontation clause in the admission of a co-defendant's confession, implicating Bruton, where the co-defendant did not testify. The Court emphasized that the violation occurred because the co-defendant "does not testify and cannot be tested by cross-examination." *Id.* at 136, 88 S.Ct. at 1628.

In a case such as the present case it is all-important to the defendant that his counsel be able to cross-examine the complaining witness, and that the jury be able to observe the witness's reaction to the cross-examination. Thus, if one follows the lead of such cases as *Pointer, Douglas,* and *Bruton,* one will agree with the dissenting opinion of the President Judge that the confrontation clause has been violated.

If further appeal is allowed, it may be that the President Judge's view will prevail, but I do not think so. The reason I do not is that the Court has made plain that its emphasis on the importance of cross-examination must be qualified by reference to other aspects of the particular case, especially, whether the declarant is unavailable. Thus in *Pointer* itself, the Court said:

> This Court has recognized the admissibility against an accused of dying declarations, *Mattox v. United States,* 146 U.S. 140, 151, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), and of testimony of a deceased witness who had testified at a former trial, *Mattox v. United States,* 156 U.S. 237, 240–244, 15 S.Ct. 337, 338–340, 39 L.Ed. 409 (1894). . . . Nothing we hold here is to be the contrary. The case before us would be a quite different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.
>
> *Pointer v. Texas, supra,* 380 U.S. at 407, 85 S.Ct. at 1069.

Here, the declarant is not unavailable because of death but because she is out of the jurisdiction. I do not think, however, that this is enough to distinguish the case from the second of the two *Mattox* decisions. I reach this conclusion because of *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). There, at the time of trial the declarant was in a federal prison. The prosecution was permitted to introduce the transcript of his testimony, taken at a preliminary hearing at which the defendant's counsel could have cross-examined him. The Court held that "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement [*i. e.,* the exception stated in the second *Mattox* decision] unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 724–25, 88 S.Ct. at 1322. Since the prosecution had made no

effort at all—as for example it might have done by seeking a writ of habeas corpus *ad testificandum*—the Court found that the declarant was not unavailable, and that therefore the defendant's right under the confrontation clause had been violated. Thus the Court implied that if the prosecution had "made a good faith effort to obtain [the declarant's] presence at trial," the confrontation clause would not have been violated. *See Commonwealth v. Faison*, 452 Pa. 137, 141–142, 305 A.2d 44, 46 (1973). *See also* Advisory Committee's Note to Rule 804(a)(5) (declarant is "unavailable" if "proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means").

I concede that some day the Court may repudiate the implication of its decision in *Barber*. It may say that even where the prosecution does make a good-faith effort to obtain the declarant's presence, still the evidence will be excluded in a case like this one, where so much may turn on cross-examination, and where the declarant could have testified had she chosen to. In the meantime, however, the witness was unavailable within the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582, for she was "out of the jurisdiction so that [s]he [could] not be effectively served with a subpoena."[1] Under *Barber*, to admit the transcript of her former testimony did not, in my opinion, violate the confrontation clause.

For these reasons I agree with the majority that judgment of sentence be affirmed.

---

1. President Judge WATKINS says that "the complaining witness was served with the subpoena but refused to return for trial." Dissenting 243 Pa.Super. at 126, at 482. She did not "refuse[ ]"; she asked the California Court to quash the subpoena, and, on the ground that to testify would be detrimental to her health, the court did. Judge Hoffman says that "the Commonwealth has not demonstrated that the complainant was 'unavailable' within the meaning of 19 P.S. § 582 . . . ." Dissenting 243 Pa.Super. at 127, at 483. I do not know, nor has it been suggested what further demonstration the Commonwealth might have made.

WATKINS, President Judge (dissenting).

I respectfully dissent.

The complaining witness testified that three men invaded her apartment after ringing the doorbell, held her at bay and raped her one at a time. The men fled, taking some household appliances with them after making threats to kill the complaining witness if she talked. The appellant was identified by the complaining witness from police photographs as one of the three men. Appellant retained counsel to represent him. Because of appellant's counsel's continued unavailability for trial, the case was not tried until 1974 (three years and seven months after his arrest) when the court appointed present counsel. Appellant was on bail during this time. The first trial ended in a mistrial because the jury was hopelessly deadlocked.

The complaining witness and her husband had moved to California before the case came to trial. They returned to Pennsylvania at the Commonwealth's expense for the first trial. Before going back to California they informed the district attorney's office in Philadelphia that they would not return for the second trial. The district attorney, however, submitted a petition under the Uniform Act to Secure Attendance of Witnesses From Without a State in Criminal Proceedings (19 P.S. § 622.-3) to the California court as well as forwarded air transportation and expense money to the district attorney of the county of their residence. The complaining witness moved to have the subpoenas quashed in the California courts. The court granted this. At the second trial, the trial court allowed the complaining witness' testimony from the previous trial to be read to the jury on the ground that the witness was "unavailable". The jury found appellant guilty of aggravated robbery and burglary, but not guilty of rape.

I agree with the majority that the appellant's claim of an unduly delayed trial is without merit.

It has been held that the Commonwealth must make a *bona fide* effort to find and serve the witness in order to avail itself of this section. *Commonwealth v. Faison,* 452 Pa. 137, 305 A.2d 44 (1973); *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). The Commonwealth argues that as it has made such a good faith effort, the reading of the prior testimony was proper. I disagree that the complaining witness was unavailable within the meaning of 19 P.S. § 582.

Appellant's first trial ended in the declaration of a mistrial because of a deadlocked jury. The record shows that the jury deliberated for several days before the trial court would declare the mistrial. From the evidence it appears that the key issue at both trials was the credibility of the complaining witness. While the reason for the deadlock is not on the record, it is a very strong presumption that one or more jurors remained unconvinced that appellant raped and robbed the complaining witness.

Under these circumstances it would deprive appellant of his Sixth Amendment right to confrontation and the jury of the opportunity to assess the demeanor of the complaining witness if the former testimony was permitted to be used.

The real issue is not whether the Commonwealth made a good faith effort to secure the attendance of the witness, which admittedly it did, but whether the complaining witness was "unavailable" within the meaning of 19 P.S. § 582, supra. The key portion of the Act is: ". . . such witness . . . be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found . . . ."

In this case the complaining witness was served with the subpoena but refused to return for the trial. Her testimony was very important in order that the jury be able to assess the complaining witness' demeanor and observe the cross-examination of the witness as to identifi-

cation. As she was aware of the trial, the complaining witness' refusal to return to Philadelphia to testify is not unavailability but rather a refusal to prosecute the case. The record will disclose that the principal objection raised by the appellant in this case was to the effect that the defendant had the right to confront his accuser and that the jury should not have been permitted to listen to a "cold" record without the privilege of observing the witness' demeanor as she testified to determine her credibility.

Appellant should have been granted a new trial.

CERCONE, J., joins in this dissenting opinion.

HOFFMAN, Judge (dissenting).

Because I believe that the Commonwealth has not demonstrated that the complainant was "unavailable" within the meaning of 19 P.S. § 582, I would agree with President Judge WATKINS that the Commonwealth should not be allowed to read from the transcript of appellant's first trial. However, I do not agree that it is necessary to reach the constitutional issue: " '[w]hen the validity of an act of the [Legislature] is drawn in question, and if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.' *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932) (footnote omitted). See *Johnson v. Robison*, 415 U.S. 361, 365, 94 S.Ct. 1160, 1165, 39 L.Ed. 2d 389 (1974); *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed. 2d 822 (1971) (plurality opinion)." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 480–81, 329 A.2d 812 (1974).

I would, therefore, reverse the judgment of sentence and grant a new trial on statutory, not Constitutional, grounds.