381 A.2d 929

**COMMONWEALTH of Pennsylvania**

v.

**Scott McNAUGHTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Decided Dec. 28, 1977.

---

Daniel T. Zamos, Assistant Public Defender, Pittsburgh, for appellant.

Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court incorrectly permitted the introduction of written hearsay evidence on which it based its adjudication of delinquency as defined by the Juvenile Act.[1] We agree and, therefore, remand for another hearing.

1. Act of December 6, 1972, P.L. 1464, No. 333, § 1 et seq.; 11 P.S. § 50–101 et seq.

On March 30, 1976, appellant, age thirteen, appeared in Juvenile Court in the Court of Common Pleas of Allegheny County in response to a petition filed by his probation officer. The petition alleged that on March 5, 1976, while appellant was at Western Psychiatric Institute and Clinic for psychiatric evaluation,[2] Dr. Solmani, appellant's treating psychiatrist, found appellant in his room showing another patient how to inject morphine. The evidence presented at the hearing consisted of a written report prepared by Dr. Solmani which was read into the record by Dr. Director, a resident at the Institute. In the report, appellant's psychiatrist stated that he observed appellant instructing another patient in the use of morphine and that appellant admitted possession of the morphine and syringes found in his room.[3] Although defense counsel objected to the admission of the hearsay statements contained in the report, the court admitted the report as a hearsay exception within the Uniform Business Records as Evidence Act.[4] The court adjudicated

2.  Appellant was placed in the Western Psychiatric Institute and Clinic after his mother gave his probation officer a .22 caliber pistol she had found in her son's possession on February 20, 1976. (Appellant was then on probation as the result of a previous delinquency adjudication.)

3.  The description of the report in question is necessarily incomplete because of the lack of clarity in the record below. The record at no point reveals the specific contents of the report nor does it even identify the report in question. Indeed, Dr. Director, the testifying physician, and the lower court both characterize the report alternatively as the "discharge summary," in which Dr. Director participated, and "Dr. Solmani's report," in which Dr. Director did not participate. Further, it is unclear from the record whether Dr. Director ever testified *from* the medical report at all. However, it is clear that the challenged report consisted of written statements describing both observations of appellant's behavior and statements allegedly made by appellant. As the textual discussion will demonstrate, we find that the introduction of the written statements describing appellant's behavior constituted inadmissible hearsay evidence. Moreover, the text will show that the introduction of these statements violated appellant's Sixth Amendment right of confrontation. Consequently, we find it unnecessary to decide whether appellant's alleged statements constituted admissions.

4.  Act of May 4, 1939, P.L. 42, No. 35, § 2; 28 P.S. § 91b. The Act provides as follows:
    "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness

306

appellant delinquent, based on his violation of the Controlled Substance, Drug Device and Cosmetic Act,[5] and placed him in detention. This appeal followed.

■ Appellant contends that the statements contained in the hospital report, the sole basis of his conviction, constitute improperly admitted hearsay evidence in violation of the Juvenile Act.[6] Our courts have held that hospital report which satisfy the requirements of the Uniform Business Records as Evidence Act[7] are admissible to show the facts of hospitalization, symptoms, and treatment. *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974); *Paxos v. Jarka Corp.,* 314 Pa. 148, 171 A. 468 (1934); *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975); *Myers v. Genis,* 235 Pa.Super. 531, 344 A.2d 691 (1975).

testifies to its identity and the mode of its preparation, and if it was made the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

5. Act of April 14, 1972, P.L. 233, No. 64, § 1; 35 P.S. § 780–101. The charges of violating the Uniform Firearms Act and making terroristic threats were not considered at the hearing.

6. Act of December 6, 1972, P.L. 1464, No. 333, § 21, 11 P.S. § 50–318 provides:

(a) A party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine witnesses.

(b) A child charged with a delinquent act need not be a witness against or otherwise incriminate himself. An extrajudicial statement, if obtained in the course of violation of this act or which could be constitutionally inadmissible in a criminal proceeding, shall not be used against him. Evidence illegally seized or obtained shall not be received over objection to establish the allegations made against him. A confession validly made by a child out of court at a time when the child is under eighteen years of age shall be insufficient to support an adjudication of delinquency unless it is corroborated by other evidence.

7. Hospital records are admissible as business records pursuant to the Uniform Business Records Act if the reports meet the following requirements: (1) The report is made contemporaneously with the events it purports to relate, (2) At the time the report was prepared, it was impossible to anticipate reasons which might arise in the future for making a false entry in the original, (3) The person responsible for the statements contained in the report is known. *Meyers v. Genis,* 235 Pa.Super. 531, 344 A.2d 691 (1975).

However, medical opinion contained in such reports and offered as expert testimony is not admissible unless the doctor who prepared the report is available for in-court cross-examination regarding the accuracy, reliability, and veracity of his opinion. *DiGiacomo,* supra. *Commonwealth v. McCloud,* supra, illustrates our courts' reluctance to permit the introduction of uncross-examined medical opinion evidence in criminal cases. Appellant in *McCloud* was charged with murder, an offense in which causation is an essential element. The Court reasoned that because the legal cause of death is often a conclusion based on conflicting medical opinion, the person offering the opinion must be present at trial for cross-examination regarding the accuracy and reliability of his opinion.

In the instant case, the lower court's adjudication of delinquency was based on appellant's violation of the Controlled Substance, Drug, Device and Cosmetic Act. The Commonwealth attempts to prove an essential element of the offense, possession of a controlled substance, solely on the basis of a doctor's written statement that appellant had morphine in his possession. The doctor's statement identifying the drug was an opinion reporting a conclusion that a lay person is not competent to make. McCormick, Evidence, p. 726 (2d ed. 1972). Because the doctor who prepared the report was not present at the hearing, there was no opportunity to cross-examine him and to challenge the methods used to arrive at his opinion. Further, the doctor who read the report into the record at the hearing conceded that he had no personal knowledge of the statements contained in the report. Consequently, the out-of-court testimony supporting appellant's conviction was totally insulated from any challenge to its veracity and reliability. *DiGiacomo,* supra; *Paxos,* supra.

Moreover, when the Commonwealth charges a juvenile with an offense which would constitute a crime if committed by an adult, the Due Process Clause of the Fourteenth Amendment requires proof beyond a reasonable

doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Johnson,* 445 Pa. 270, 284 A.2d 780 (1971). Thus, the lower court must base its adjudication of delinquency on evidence that proves that the facts supporting the adjudication are true beyond a reasonable doubt. *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Consequently, inadmissible hearsay evidence may not provide the basis for an adjudication of delinquency. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Farms Appeal,* 216 Pa.Super. 445, 268 A.2d 170 (1970).[8] In the instant case, because the statements contained in the hospital report are not within an exception to the hearsay rule, they do not provide sufficient support for the delinquency adjudication.

■ Finally, even if the reporting doctor's identification of the drug was not opinion evidence, the lower court's admission of the report into evidence was, nevertheless, constitutional error. As our Supreme Court has stated: "The purpose of offered evidence can determine its admissibility with respect to the confrontation clause." *McCloud,* supra, 457 Pa. at 314, 322 A.2d at 656. Although the Court recognized the validity of the Uniform Business Records as Evidence Act, the Court noted that the Act "is applicable only to the extent that it does not conflict with either the Pennsylvania or United States Constitutions." *McCloud,*

8.  Since *In re Gault,* supra, our courts have significantly expanded the constitutional rights afforded juveniles. Earlier cases had held that juveniles had no privilege against self-incrimination and that hearsay evidence could support juvenile convictions. *In re Holmes,* 379 Pa. 599, 109 A.2d 523 (1954); *cert. denied,* 348 U.S. 973, 75 S.Ct. 535, 99 L.Ed. 757 (1955). However, following *Gault,* supra, our courts have applied many of the constitutional protections afforded adults to juveniles. *See, In re Terry,* 438 Pa. 339, 265 A.2d 350 (1970) (Juveniles have the right to timely notice of the charges, the right to counsel, the right to confrontation and cross-examination, and the privilege against self-incrimination). *In re Johnson,* supra (Juveniles are entitled to proof beyond a reasonable doubt); *Farms Appeal,* supra (Inadmissible hearsay evidence may not provide the basis of an adjudication of delinquency). See also, The Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333 § 1 et seq.; 11 P.S. § 50–101 et seq.

supra, 457 Pa. at 311, n. 1, 322 A.2d at 654.[9]  In the instant case, the statements contained in the report constitute the sole basis for the drug charge on which the lower court based its adjudication of delinquency.  To preclude appellant from cross-examining the only testimony supporting his conviction is to deny to him the right to confront his accusers as guaranteed by the Sixth Amendment of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution.

Accordingly, we vacate the lower court's adjudication of delinquency and order a new hearing.

SPAETH, J., files a concurring opinion.

CERCONE, J., files a dissenting opinion in which PRICE and VAN der VOORT, JJ., join.

SPAETH, Judge, concurring:

I do not read the record quite as Judge CERCONE does. As Judge HOFFMAN notes at p. 305 n. 3, it is unclear what records were in evidence, and what they contained.[1]  However, for purposes of discussion I am willing to accept Judge CERCONE's statement of the record.  On that basis, I agree with Judge CERCONE that the statements in question were admissible as within the business records exception to the rule against hearsay evidence;  but I agree with Judge HOFFMAN that the admission of the records was in violation of appellant's right to confront the witnesses against him.

1

■ A business record may contain two sorts of entry. The first sort of entry is where the person making the entry *has personal knowledge of the information contained* in the entry.  A common example is an entry in a hospital record by a nurse, recording when she took the patient's tempera-

9.  *See also State v. Matousek,* 287 Minn. 344, 178 N.W.2d 604 (1970); *State v. Tims,* 9 Ohio St.2d 136, 224 N.W.2d 348 (1967).

1.  *See* the record at 15, 20, and 21.

ture, and what the temperature was. The second sort of entry is where the person making the entry *does not have personal knowledge of the information contained* in the entry but is only recording *what another person has said.* A common example is where a police officer makes an entry in an accident report that he spoke to a person on the scene who said that he was the driver of the 1974 Oldsmobile, which the officer saw smashed against the telephone pole. The officer has personal knowledge of *what the person he spoke to said,* and he enters what the person said, but the officer does not have personal knowledge of *whether the information thus given him is accurate.*

The present case involves the second of these two sorts of entry: The treating physician had personal knowledge of what appellant said, and he entered what appellant said; but he did not have personal knowledge of whether in fact appellant had been teaching another patient how to inject morphine.

The Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b, does not distinguish between an entry recording personal knowledge of the fact entered and an entry limited to recording personal knowledge that a certain statement was made. The Act does provide that if an entry satisfies the other requirements of the Act, the court shall decide whether "the sources of information, method and time of preparation were such as to justify its admission." This seems to imply that a court might in a given case insist that to be admissible the entry must record personal knowledge. The boundaries of this implication, however, are indistinct, and the cases are by no means uniform in defining them. *See, e. g.,* 5 Wigmore, Evidence § 1530 (Chadbourn ed. 1974); McCormick, Evidence § 310 (Cleary ed. 1972).

McCormick suggests, *supra,* that "probably the approach that most courts . . . take" is to recognize that the second sort of entry presents a problem of double hearsay. If this approach is taken, whether the entry is admissible depends upon whether both of the hearsay problems can be

solved. In other words: There are two out-of-court declarants. Declarant No. 1 is the person who made the entry, recording what Declarant No. 2 said. Two questions must be asked, one regarding Declarant No. 1's statement, the second, regarding Declarant No. 2's.

The first question will be whether the entry was made by Declarant No. 1 in the regular course of business, or stated more fully, whether the entry is "of an act, condition or event", whether "it was made in the regular course of business at or near the time of the act, condition or event", and whether "the custodian or other qualified witness testifies to its identity and the mode of preparation." 28 P.S. § 91b. If these conditions are met, the entry may be admitted *as proof of what Declarant No. 1 knew*, that is, as proof of the fact *that Declarant No. 2 made such—and—such a statement*, as recorded in the entry.

The second question will then be whether Declarant No. 2's statement is admissible. Several answers to this question are possible.

First, Declarant No. 2's statement may be admissible because no hearsay problem may be presented. This will be so if the issue is not whether the information contained in the statement is true but only whether the statement was made.

Second, if Declarant No. 2's statement is being offered for its truth, it is hearsay, but it may nevertheless be admissible because it falls within an exception to the hearsay rule. One available exception may be the business records exception. This will be so if in making the statement Declarant No. 2 was himself acting as part of the business organization and was under a duty to make the statement. Suppose, for example, that a resident physician (Declarant No. 1) makes an entry recording a statement by a nurse (Declarant No. 2) that the patient had a sleepless night. The nurse was under a duty to make this statement to the physician, and the statement is therefore admissible as a business entry. Even if Declarant No. 2's statement is not within the business records exception, it may be within some other exception to

the hearsay rule. Consider the example suggested above, of the police officer investigating an accident. The police officer is Declarant No. 1; it may be held that he is under a duty to record what persons on the scene tell him. The person he talks to is Declarant No. 2. Declarant No. 2's statement, recorded by the officer, that he was the driver of the 1974 Oldsmobile, may be admitted in an action against him as within the admissions exception to the hearsay rule.

Third, Declarant No. 2's statement may be hearsay but not within an exception to the hearsay rule. It will then be inadmissible. With respect to this possibility, Wigmore would not be so strict; as I understand him, he would only require proof that Declarant No. 2 had personal knowledge of the facts contained in his statement to Declarant No. 1, without further requiring that Declarant No. 2's statement be within an exception to the hearsay rule—at least, he would adopt this approach if Declarant No. 2 were unavailable. Wigmore, *supra*.

For purposes of deciding the present case it may be assumed that the proper approach is the comparatively strict, two step analysis believed by McCormick to represent the approach most courts would take. Perhaps in some other case we may decide not to be so strict, but we need not decide that now. Adopting this approach, I conclude that the entry of appellant's statement to the treating physician was admissible. The treating physician is Declarant No. 1. While the point is not entirely clear, it seems to me that it was within the physician's duty to record appellant's statement to him. Perhaps not. Suppose, for example, that appellant had told the physician that his *sister* had used morphine. Here, however, appellant's statement was relevant to the physician's care of appellant, at least I think so. Granted that the statement was not, "I am using morphine." However, the fact that appellant said he was teaching another patient how to inject morphine must have suggested to the physician that appellant himself was, or might be, addicted to morphine. Such information was relevant to the decision how to treat appellant and may therefore properly

be viewed as recorded by the physician pursuant to his duty to record such relevant information. Appellant is Declarant No. 2. His statement is at least within the admissions exception to the hearsay rule. I agree with Judge CERCONE that it is immaterial that the statement may be regarded as conclusory or in the nature of an expression of expert opinion by a lay witness.

## 2

■ The relationship between the confrontation clause of the Sixth Amendment and the rule against hearsay evidence is not clear. In *Commonwealth v. Griffin*, 243 Pa.Super. 115, 364 A.2d 477 (1976), I concluded that no clear, or authoritative, definition of the relationship was available but that we must proceed on a case by case basis, weighing, on the one hand, the importance to the defendant of cross-examination, and on the other, the availability of the declarant. 243 Pa.Super. at 119–23, 364 A.2d at 479–81 (concurring opinion).

*Griffin* was a difficult case (reflected by the 4–3 decision in this court). On the one hand, the importance to the defendant of cross-examination could hardly be overstated; the charge was rape and the declarant was the alleged victim. On the other hand, the declarant was unavailable and her statement was plainly within the reported testimony exception to the hearsay rule. Given these circumstances a majority of the court concluded that the defendant's Sixth Amendment right to confront the witnesses against him had not been violated. (PRICE, J. wrote the opinion for the court, JACOBS and VAN der VOORT, JJ., joining him; SPAETH, J., wrote a concurring opinion; WATKINS, P. J., wrote a dissenting opinion, CERCONE, J., joining him; HOFFMAN, J., wrote a dissenting opinion). The crucial facts, it seemed to me, were that the defendant at his first trial had the opportunity to cross-examine the victim, and that at his second trial the Commonwealth could not produce the victim.

The present case, I suggest, is considerably less difficult than *Griffin*. Here, the *only* evidence against appellant is hearsay evidence; appellant has *never* had the opportunity to cross-examine the declarant; and there is *no showing* that the declarant was unavailable. In these circumstances it is clear to me, as it is to Judge HOFFMAN, that the admission of the evidence represented a violation of appellant's right of a confrontation.

Professor Kenneth Graham, author of a provocative article on the confrontation clause,[2] appears to reach a conclusion similar to the one that Judge HOFFMAN and I have reached in this case. Graham suggests that in order to reach a satisfactory harmonization of the confrontation clause with hearsay doctrine it is necessary to shift the analysis from that of admissibility to that of sufficiency:

> [W]hether or not a particular person is a "witness against" the defendant depends upon the use to which his statements are to be put. If his contribution makes him the "principal witness" for the prosecution, as the United States Supreme Court described the witnesses in *Pointer* [*v. Texas*, 380 U.S. 400, 402, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)] and *Barber* [*v. Page*, 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)], he must be confronted, absent excuse or waiver. If, on the other hand, his "testimony" is not "crucial," as the Court said the statement was not in *Dutton* [*v. Evans*, 400 U.S. 74, 87, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)], the prosecution need not produce him at trial. Vague as they may be, these respective categories require an analysis of the evidence in the context of the case rather than in the abstract.
>
> Though the Court has not done so, the concepts are capable of a more concrete delineation. Surely the fact that without the evidence supplied by the person at issue the prosecution could not have survived a motion for acquittal based on the constitutional insufficiency of the proof will be a significant factor in making him a "witness

**2.** Graham, *The Right of Confrontation and the Hearsay Rule*: *Sir Walter Raleigh Loses Another One*, 8 Crim.L.Bull. 99 (1972).

against" the defendant for purposes of the right of confrontation. Graham, *supra* note 1, at 129 (footnotes omitted).

Since juveniles are entitled to proof of guilt beyond a reasonable doubt, *In re Johnson,* 445 Pa. 270, 284 A.2d 780 (1971), by Graham's suggested test the evidence in this case would be found insufficient: without the disputed report in evidence, the Commonwealth "could not have survived a motion for acquittal based on the constitutional insufficiency of the proof."

The correctness of the foregoing analysis is at least suggested by the decision of our Supreme Court in *Commonwealth v. Thomas,* 443 Pa. 234, 279 A.2d 20 (1971). There, evidence of various out-of-court statements had been admitted as declarations of the deceased indicating an existing state of mind. The defendant argued that the admission violated his Sixth Amendment right of confrontation. The Supreme Court held to the contrary, noting, first, that the declarations were within an exception to the hearsay rule, second, that the declarant was unavailable because dead, and finally, that the evidence was in no sense crucial to the defendant and in fact showed little more than that a relationship between him and the declarant existed—a fact established by other evidence. The important point for purposes of the present case is the Court's clear indication that its ruling might have been different had the evidence been "crucial." *See especially* 443 Pa. at 242, 279 A.2d at 24.[3]

---

3. The dissent says, in note 2 of its opinion, that "appellant did not raise" his constitutional right of confrontation, noting that "appellant's brief cites none of the cases" that I have cited. I cannot agree that appellant has not raised his constitutional right of confrontation. Appellant has argued:

Young Scott McNaughton was denied his constitutional right to confront and cross-examine the witnesses who drafted the report. The record reveals no other evidence was introduced to establish this delinquent act other than the medical report containing the admission of young Scott McNaughton. Under Pennsylvania law, a child cannot be declared a "Delinquent Child", unless there is proof beyond a reasonable doubt that he committed a "Delinquent Act."

316

CERCONE, Judge, dissenting:

The instant appeal arises from the adjudication of the Juvenile Court of Allegheny County that appellant, Scott McNaughton, was a delinquent child as defined by The Juvenile Act, 11 P.S. § 50–102 (Supp.1977). As a result of this adjudication, and upon the recommendation of a psychologist, the court committed appellant to Pennsylvania George Junior Republic. The only issue raised on appeal is whether certain records compiled by the staff of the Western Psychiatric Institute and Clinic (WPIC) were sufficiently authenticated to be admitted into evidence under the Uniform Business Records as Evidence Act, 28 P.S. §§ 91a–91d (1958). The facts are as follows:

On Friday, February 20, 1976, Scott's mother found an unloaded .22 calibre pistol in the pocket of Scott's coat. Because Scott, who was thirteen years old, had previously been adjudicated delinquent for armed robbery, Mrs. McNaughton turned the pistol over to Scott's probation officer. The following Monday, February 23rd, Scott's probation officer took him to the Shuman Detention Center in Pittsburgh where Scott was given a hearing on February 25th. Subsequently, from March 1 to March 8, 1976, Scott was hospitalized at WPIC for psychological testing and evaluation, then returned to the Shuman Center. During his stay at WPIC Scott stole from the infirmary hypodermic needles which were discovered in his possession along with a quantity of morphine. At the time of this discovery Scott was attempting to teach another patient how to inject the drug. According to the treating physician, Scott admitted all these facts when he was caught with the contraband.

■ At the delinquency hearing the Commonwealth sought to prove facts related to the drug incident, not by the testimony of the treating physician who found Scott in possession of the contraband and heard his admission, but by offering the physician's report thereof as a hearsay excep-

Appellant's Brief at 10.

tion under the Uniform Business Records as Evidence Act, supra. The report was authenticated at the hearing by Dr. Kenneth Director, the resident in charge of the in-patient ward into which Scott had been admitted at WPIC. Over the objection of defense counsel the court admitted the record and based its adjudication of delinquency largely upon that report. I find no error in the court's admitting the report and would affirm.[1]

At the outset it should be noted that, if the report did not fall within the scope of the business records exception to the hearsay rule, the instant adjudication of delinquency would be reversed. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) guaranteed juveniles charged with crimes in delinquency proceedings numerous of the constitutional rights which would attach in an ordinary criminal prosecution, including the right to cross-examine witnesses for the prosecution. Furthermore, The Juvenile Act, 11 P.S. § 50–318 (Supp.1977) codifies these guarantees and, in pertinent part in subsection (b), provides:

"An extrajudicial statement, if obtained in the course of a violation of this act or which could be constitutionally inadmissible in a criminal proceeding, shall not be used against [a child charged with a delinquent act]."

Hence, an adjudication of delinquency may not rest on hearsay evidence which would be inadmissible in a criminal prosecution.

In the instant case, however, the reports of the staff physicians would be admissible in a criminal proceeding because they fall within the hearsay exception incorporated in the Uniform Business Records as Evidence Act, 28 P.S. §91b, which provides as follows:

"A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of

---

1. The charges concerning possession of the .22 calibre pistol were dismissed largely because the gun was inoperable.

its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

To authenticate the report of the drug incident, the Commonwealth called Dr. Director who established the identity and mode of the report's preparation, and that it was made in the ordinary course of the hospital's business, at or near the time of the event by a staff physician who had observed the event. Within the discretion vested in the hearing court by the business records act the court accepted the report into evidence. Looking to the criteria of *Paxos v. Jarka Corp.*, 314 Pa. 148, 171 A. 468 (1934) the court in the instant case found: (1) that the report was made contemporaneously with the conduct it purports to relate; (2) that, at the time of making, it was impossible to anticipate reasons which might subsequently arise for making a false entry in the original; (3) that the person responsible for making the entry was knowledgeable. See also *Rockwell v. Stone*, 404 Pa. 561, 572–73, 173 A.2d 48 (1961). Since these findings were based upon the testimony of the physician in charge, Dr. Director, the hearing court properly admitted the report into evidence.

Nevertheless, the plurality opinion argues that the report should not have been admitted unless the treating physician were present to testify as to its veracity. Relying on cases such as *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974) and *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975), the plurality weaves to the conclusion that Scott McNaughton was denied his constitutional right to confront his accusers. This conclusion rests upon a misconstruction of the contents of the treating physician's report and a misapprehension of the law of evidence.

First, the report as read into the record by Doctor Director contained no medical opinion—the report in material

part related what the treating physician saw and heard. He did not opine that Scott possessed morphine, Scott told him he did. Scott also admitted that he had stolen the hypodermic syringes, that he had taken morphine previously, and that the morphine in question was brought to him by a friend. Hence, *DiGiacomo*, supra, and *McCloud*, supra, do not indicate that reversal in this case is appropriate; on the contrary, those cases fortify our conclusion that receiving the report into evidence was correct. Both *DiGiacomo* and *McCloud* recognize that medical reports are admissible into evidence under the Business Records as Evidence Act when they relate, inter alia, the symptoms manifested by a patient. From a psychological viewpoint Scott's conduct at WPIC was a symptom of his state of mind, and the incident was used by the physicians at WPIC for diagnostic as well as prognostic purposes. As such, under the rationale of *DiGiacomo* and *McCloud*, the report was properly received into evidence at the delinquency hearing.

Second, relying on McCormick, Evidence 726 (2d ed. 1972), the plurality suggests that to the extent the report relates Scott's conclusion that he possessed morphine, the report was inadmissible because Scott was not an expert competent to draw that conclusion or offer that opinion. This is incorrect, of course, because Scott was a party to the delinquency proceedings, so his extrajudicial statements were admissions. The commentators, including Dean McCormick, agree that admissions in the form of opinions are not susceptible to objection under the "Opinion Rule." See, e. g., McCormick, Evidence 631–33 (2d ed. 1972); Conrad, Modern Trial Evidence § 463 (1956); Henry, Pennsylvania Evidence §§ 71, 77 (1953). As Professor Wigmore has stated in his brilliant treatise on evidence:

"A primary use and effect of an admission is to discredit a party's claim by exhibiting his inconsistent other utterances. . . . It is therefore immaterial whether these other utterances would have been independently receivable as the testimony of a qualified witness. It is their

inconsistency with the party's present claim that gives them logical force." IV Wigmore on Evidence § 1053, p. 12 (3rd ed. 1940).

Thus it is that the "Opinion Rule" does not apply to admissions: "To extend the arbitrary trivialities of the Opinion Rule to parties' admissions would be the extreme of futility." *Id.* at p. 15. Accordingly, Pennsylvania has expressly rejected the notion that an admission is objectionable if it contains an opinion the speaking party was not demonstrably competent to make. *Beardsley v. Weaver*, 402 Pa. 130, 166 A.2d 529 (1961); *Salvitti v. Throppe*, 343 Pa. 642, 23 A.2d 445 (1942).[2]

For the foregoing reasons, I would affirm the order of the court below.

PRICE and VAN der VOORT, JJ., join in this dissenting opinion.

**2.** Judge Spaeth's concurring opinion raises the question of whether even if the medical report in the instant case falls within the provisions of the Business Records as Evidence Act, appellant was nevertheless denied his constitutional right to confront his accuser. In other words Judge Spaeth's opinion suggests that in some cases the Business Records as Evidence Act, if strictly followed, can operate unconstitutionally. However, as academically interesting as this argument may be, appellant did not raise it. Appellant's argument is that the evidence of the medical report in the instant case did not conform to the requirements of the Act; *therefore*, appellant was denied his right to confront and cross-examine his accuser. Obviously, the argument which appellant raises on appeal bears at best only superficial resemblance to the argument Judge Spaeth raises to reverse the order of the lower court. No doubt that is why appellant's brief cites none of the cases Judge Spaeth finds persuasive. In any event *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975) condemns the practice of courts' raising constitutional arguments which the parties themselves have not employed. Perhaps my opinion has already explored appellant's case more expansively than appellant's brief commends. However, on the issue which Judge Spaeth finds dispositive, appellant's brief leaves us utterly in darkness. Therefore, I do not deem it proper to discuss the issue.