**NABISCO BRANDS, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TROPELLO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 25, 2000.

Decided Dec. 5, 2000.

Jack T. Ribble, Jr., Philadelphia, for petitioner.

Charles J. Arena, Blue Bell, for respondent.

Before McGINLEY, Judge, FRIEDMAN, Judge and MIRARCHI, Senior Judge.

FRIEDMAN, Judge.

Nabisco Brands, Inc. (Employer) appeals from the April 28, 2000 order of the Workers' Compensation Appeal Board (WCAB), which (1) affirmed the decision of a workers' compensation judge (WCJ) to grant the claim petition filed by John Tropello (Claimant) based on a 21% binaural hearing impairment and (2) increased the award of benefits from 52 to 54.6 weeks. We affirm as modified.

Claimant began working for Employer in 1970 as a floor helper and became a mixer in 1980. As a mixer, Claimant is a chocolate operator, which entails taking weights of the chocolate in the machines every one-half hour. In order to take the chocolate weights, Claimant has to open the door of the unit and put his head inside. The units contain large fans, vibrators and mesh wire that rotate and make a lot of noise. Claimant operates a second line controlling the dry weight of the product. There are blowers and vibrators on the second line, and sometimes Claimant has to set the vibrator higher to knock the chocolate off. Claimant also works on the Oreo line, controlling the mixture for the cookie icing. The Oreo line has fans, a sifter, a vibrator, a rotator and a compressor, which create a lot of noise. In addition, Claimant works in the kitchen area four to five times a year, where he has to fill a vibrating sugar bin. (WCJ's Findings of Fact, No. 4.)

Claimant began noticing changes in his hearing in 1992, and has worn hearing aids, which he obtained from Miracle Ear, in both ears since 1993. (WCJ's Findings of Fact, Nos. 4 and 5.) Claimant filed a claim petition on January 2, 1996, alleging a hearing loss from exposure to noise on the job. A hearing was held before the WCJ, during which Claimant advised he was limiting his claim to 52 weeks of benefits (R.R., N.T. at 31), in order to introduce medical reports under section 422 of the Workers' Compensation Act (Act).[1]

> *Where any claim* for compensation at issue before a workers' compensation judge *involves fifty-two weeks or less* of disability,

---

1. Section 422 of the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 835 (emphasis added), provides:

During the hearing, Claimant testified on his own behalf and presented medical reports from Robert J. Wolfson, M.D. and Emil P. Liebman, M.D., (WCJ's Findings of Fact, No. 8), who are both Board-certified in Otolaryngology. (O.R., WCAB op. at 3-4.) Although Dr. Wolfson was an expert selected by Employer to examine and evaluate Claimant for purposes of litigation, Claimant was permitted to submit and rely upon Dr. Wolfson's medical reports. (WCJ's Decision, Discussion section.) In his first report, Dr. Wolfson recorded his findings of a March 14, 1996 examination of Claimant, during which Dr. Wolfson performed a complete ear, nose and throat examination and a complete audiologic analysis. Using the American Medical Association's (AMA) guidelines, Dr. Wolfson calculated Claimant's degree of loss at 20.6% in the right ear and 24.98% in the left ear, with a total impairment at 20.3%. (WCJ's Findings of Fact, No. 6.)

In a second report, dated June 17, 1996, Dr. Wolfson commented on the variation between the results of tests performed on Claimant in June 1993 and those performed in November 1995. Dr. Wolfson concluded that, although minor variations in the test results were of no clinical significance, they were consistent within an occupationally induced hearing loss. Dr. Wolfson also determined that the difference between the hearing loss in Claimant's left and right ears was consistent with an occupationally induced hearing loss due to acoustic trauma. Finally, Dr. Wolfson noted that Claimant's hearing loss was detected in the initial audiogram performed on May 7, 1975; however, Dr. Wolfson opined that given the Claimant's age of 58 years, no significant amount of the loss would be secondary to presbycusis.[2] (WCJ's Findings of Fact, No. 7).

In a third report, dated December 2, 1996, Dr. Wolfson reviewed Claimant's audiogram. Dr. Wolfson indicated that, from 1992 to 1995, there was no significant change in Claimant's audiogram and that Claimant's hearing loss was stable. (WCJ's Findings of Fact, No. 9.)

Dr. Liebman evaluated Claimant on January 2, 1996. In a January 19, 1996 report, Dr. Liebman indicated that Claimant reported noticing some loss of hearing. Claimant also stated that he had worked at a noisy facility for 25 years and had worn ear protection for the last 7 years. According to the report, Dr. Liebman examined Claimant and removed cerumen (wax) from his ear canals; however, applying the AMA guidelines, Dr. Liebman determined that Claimant's degree of disability was 0% monaural (right and left) and zero degrees binaural. (WCJ's Findings of Fact, No. 10.)

After reviewing the evidence, the WCJ accepted the medical reports of Dr. Wolfson as "competent, unequivocal, and persuasive in their entirety." The WCJ also accepted the medical reports of Dr. Liebman, but to the extent the findings of Dr. Liebman conflicted with the findings of Dr. Wolfson, the WCJ rejected Dr. Liebman's reports as not persuasive. (WCJ's Findings of Fact, No. 13.) The WCJ granted the claim petition and ordered Employer to pay Claimant 52 weeks of specific loss benefits at the weekly compensation rate of $527.00 for his occupational hearing loss

---

either the employe or the employer *may submit a certificate by any health care provider* as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability ... and *such statements shall be admissible as evidence* of medical and surgical or other matters therein stated *and findings of fact may be based upon such certificates or such reports.* Where any claim for compensation at issue before a workers' compensation judge exceeds fifty-two weeks of disability, a medical report shall be admissible as evidence unless the party that the report is offered against objects to its admission.

**2.** Also known as presbyacusis, the loss of ability to perceive or discriminate sounds as part of the aging process. *Stedman's Medical Dictionary* 1254 (25th ed.1990).

of January 2, 1996, the determined date of injury.

Employer appealed to the WCAB, which affirmed the WCJ's grant of compensation. However, the WCAB determined that the WCJ should have granted the claim petition for 54.6 weeks, not 52, and modified the benefits accordingly.[3]

■ On appeal to this court,[4] Employer first argues that, for a specific loss claim, the WCJ should not have allowed Claimant to submit expert evidence comprised solely of medical reports because the legislature has limited this procedure to claims for disability benefits. However, during the hearing before the WCJ, Employer did not object to the introduction of the reports in the context of a specific loss claim;[5] therefore, Employer has waived the issue.[6]

■ Next, Employer contends that the WCAB exceeded its scope of review by recalculating and increasing Claimant's benefits to 54.6 weeks when Claimant had voluntarily limited his claim to 52 weeks in order to introduce the medical reports under section 422 of the Act. We agree. Because Employer objected to Claimant's use of Dr. Wolfson's reports, the reports were admissible only for a claim of 52 weeks or less.[7] Section 422 of the Act, 77 P.S. § 835. Thus, if Claimant had not elected to limit his claim to 52 weeks, he would not have proved his case. Claimant made, and benefited from, the choice to take advantage of this evidentiary rule, and he cannot now receive benefits for 54.6 weeks.

■ Finally, Employer argues that the WCJ should not have permitted Claim-

---

**3.** The WCAB addressed Employer's argument that the WCJ erred in finding the date of injury was January 2, 1996. The WCAB found that Claimant had relied upon the report of Dr. Wolfson, who determined Claimant's hearing loss to be in excess of ten percent during his March 14, 1996 examination of Claimant. Therefore, the WCAB found the Claimant's date of injury actually was March 14, 1996. However, the WCAB determined that the WCJ erred in calculating the benefits under the Act. Section 2 of the Act of February 23, 1995, P.L. 1, *as amended,* 77 P.S. § 513(8)(i), (emphasis added), which amended the loss of hearing portion of the Act, provides:

> For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides. *The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks.* Compensation payable shall be sixty-six and two-thirds per centum of wages during this number of weeks....

Based on this provision, the WCAB modified the award, finding the percentage of hearing loss (21%) should have been multiplied by 260, and, thus, granted the claim petition for 54.6 weeks.

**4.** Our scope of review is limited to determining whether constitutional rights were violat-

ed, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**5.** We note that Employer did object to the medical reports; however, in doing so, Employer objected solely on the basis that Employer, not Claimant, had retained the doctor to conduct a medical examination of Claimant.

**6.** An issue must be preserved at every stage in the proceeding; otherwise, it is waived. *See* 1 G. Ronald Darlington, et al., Pennsylvania Appellate Practice 2d § 302:59 (1999) (citing *Kraus v.. Taylor,* 710 A.2d 1142 (Pa.Super.1998)). This strict doctrine of waiver is applicable to workers' compensation proceedings. *See Mearion v. Workers' Compensation Appeal Board (Franklin Smelting & Refining Company),* 703 A.2d 1080 (Pa.Cmwlth.1997), appeal denied, 555 Pa. 748, 725 A.2d 1223 (1998); *Purex Corporation v. Workmen's Compensation Appeal Board,* 66 Pa.Cmwlth. 499, 445 A.2d 267 (1982), overturned in part on other grounds by this court in *American Chain & Cable Company v. Workmen's Compensation Appeal Board (Weaver),* 70 Pa. Cmwlth.579, 454 A.2d 211 (1982).

**7.** Section 422 of the Act only allows medical reports to be admitted for claims over 52 weeks if there is no objection from the other party.

ant to use the reports of Dr. Wolfson because Employer, not Claimant, retained Dr. Wolfson for purposes of litigation. We disagree. A party can always call an opposing party's witness to testify. *See* Section 5935 of the Judicial Code, *as amended*, 42 Pa.C.S. § 5935. Furthermore, workers' compensation proceedings are not governed by technical rules of evidence,[8] and there is nothing that prohibits a claimant from submitting the report of an employer's medical expert. In support of its contrary position, Employer cites *Columbia Gas Transmission Corporation v. Piper*, 150 Pa.Cmwlth. 404, 615 A.2d 979 (1992). However, Employer's reliance on that case is misplaced.

In *Columbia Gas*, the plaintiff called as witnesses two real estate appraisers who had been retained by the defendant. The appraisers claimed that it would be contrary to their code of ethics to disclose any of their conclusions or analysis, absent an order from the court. The trial court declined to compel the appraisers to testify against their wishes for the opposing side and cited Pa. R.C.P. No. 4003.5(a)(3), which generally prohibits the discovery of materials in retained expert reports.[9] This court held the trial court was correct in refusing to compel the testimony because it would be contrary to Rule 4003.5(a)(3). *See Columbia Gas.*

Unlike the situation in *Columbia Gas*, the WCAB here found that Employer had never employed Dr. Wolfson; rather, he "was an independent medical practitioner who performed a finite service at [Employer's] request" and "voluntarily prepared his report on Claimant's behalf." (O.R., WCAB op. at 7.) Employer does not present any evidence to show that it employed Dr. Wolfson, or that Dr. Wolfson prepared his report involuntarily. Because Dr. Wolfson was not employed by Employer and was not compelled to prepare or produce a report, neither Pa. R.C.P. No. 4003.5 nor *Columbia Gas* applies here. The WCJ, as the ultimate fact finder, was free to accept or reject the opinions of the medical experts, and this court is bound by the credibility determinations made by the WCJ. *See Trimmer v. Workers' Compensation Appeal Board (Monaghan Township)*, 728 A.2d 438 (Pa. Cmwlth.1999). Because Dr. Wolfson's medical reports support the award of benefits to Claimant, we affirm the WCAB order to the extent that it grants Claimant's claim petition for an injury on March 14, 1996. However, we modify the decision of the WCAB to provide Claimant with 54.6 weeks of compensation, limiting the compensation award to 52 weeks.

## ORDER

AND NOW, this 5th day of December, 2000, the order of the Workers' Compensation Appeal Board, dated April 28, 2000, is hereby affirmed, as modified, to award 52 weeks of compensation in accordance with this opinion.

---

8. *See Cruz v. Workers' Compensation Appeal Board (Philadelphia Club)*, 728 A.2d 413 (Pa. Cmwlth.1999); Section 422(a) of the Act, 77 P.S. § 834.

9. Pa. R.C.P. No. 4003.5(a)(3) provides:

A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of the court as to any other expert upon a showing of exceptional circumstances. . . .