Lisa Ann DOLAN and Gerald
Dolan, Appellee

v.

Anthony FISSELL, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 27, 2009.

Filed May 1, 2009.

Reargument Denied July 8, 2009.

**1010**

Michael J. Diamond, Philadelphia, for appellant.

Nicholas V. Pinto, Philadelphia, for appellees.

BEFORE: KLEIN, SHOGAN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 Anthony Fissell appeals from the order entering a $434,757.25 judgment against him[1] and in favor of plaintiffs Lisa Ann Dolan and Gerald Dolan (for loss of consortium)[2] for a motor vehicle accident after he appealed from an arbitration award against him for $28,220. Among other arguments, Fissell claims that the court erred in 1) allowing Dolan to withdraw her stipulation to proceed on medical reports[3] and limit her recovery to $25,000; and 2) allowing the expert initially retained by Fissell to testify for Dolan. After review of the cogent opinion of the trial judge, the Honorable Edward Griffith, the submissions by the parties and relevant law, we affirm.

¶ 2 Fissell raises the following five complaints of error:

1. The trial court abused its discretion in allowing Dolan to withdraw a stipulation to proceed on medical reports and limit damages to $25,000.

2. The trial court erred in permitting Dolan to use testimony of the chiropractor who conducted the independent medical examination and wrote a report acknowledging the injuries.

3. The trial court erred by denying a motion for mistrial after a brief mention of insurance by an expert in defining an "independent medical exam."

4. The damage award was gross and excessive.

5. The verdict was against the weight of the evidence.

---

1. The verdict was $410,000, which was adjusted for delay damages. Judgment followed a jury trial which was held following a defense appeal from arbitration.

2. Lisa Ann Dolan was the person injured in the accident, and for convenience we will refer to her as "Dolan" the plaintiff although there is a consortium claim.

3. Pa.R.C.P. 1311.1.

We believe none of these claims has merit.

**Facts and Procedure**

¶ 3 At trial Dolan testified that she was in traffic and slowed her van to less than five miles per hour when she heard screeching tires and her minivan was hit from behind by Fissell's car, pushing her car into the car in front of her. She claimed continuing chronic back pain as a result of the accident. Her treating physician testified for Dolan saying that she suffered from permanent chronic sprain syndrome attributable to the accident with Fissell, which would cause pain during her daily activities. Dr. Jess Armine, who was originally hired by Fissell to perform an independent medical examination, also testified for Dolan, supporting the treating physician's claim that the back injury was permanent.

¶ 4 The parties appeared for compulsory arbitration on June 23, 2006 and Dolan was awarded $28,220. Fissell appealed. On August 31, 2006, Dolan filed a stipulation under Pa.R.C.P. 1311.1 to proceed on medical reports and limit damages to $25,000. On December 7, 2006, at a settlement conference, Dolan moved for permission to withdraw the Rule 1311.1 stipulation. Counsel for Dolan claimed that he did not realize that $8,200 in property damage would be part of the $25,000 limit. Judge Griffith, over Fissell's objection, allowed the withdrawal and continued the case to February 28, 2007. The case was

continued once again until the summer and it was ultimately tried on August 28, 2007.

¶ 5 After the motion to withdraw the stipulation was granted, Fissell obtained a defense medical examination by Dr. Jess Armine, R.N., D.C.[4] Dr. Armine examined Dolan on January 31, 2007. Doctor Armine issued an expert report shortly thereafter, diagnosing Dolan with chronic sprain syndrome.[5] Pursuant to Pa.R.C.P. 4010(b), Dr. Armine's report was delivered to Dolan. Fissell decided not to use Dr. Armine as a witness presumably because the doctor's report was favorable to Dolan. Thereafter, Judge Griffith found as a fact Dolan's counsel called Dr. Armine and asked if he was willing to testify as to his report. The doctor agreed and the only further conversation was about schedule and billing, and counsel never talked to the doctor about the case.

¶ 6 On August 29, 2007, the jury rendered a verdict for $410,000 which was later molded to include $24,757.25 in delay damages. Post-verdict motions were denied and this appeal followed.

**1. Was it proper to allow the plaintiff to withdraw the stipulation to proceed on medical reports and limit damages to $25,000 as provided by Pa.R.C.P. 1311.1?**

■ ¶ 7 This is an issue of first impression, although the Rule is more than five years old. Rule 1311.1 does not address the situation as to whether or when a plaintiff's counsel is allowed to withdraw the stipulation.[6]

---

4. This is not an error. Doctor Armine is both a Registered Nurse and a Doctor of Chiropractic.

5. While Dr. Armine agreed with the permanent nature of the sprain syndrome, he did not attribute Dolan's herniated lumbar disc to the accident.

6. This problem was noted in my concurring opinion in *Kopytin v. Aschinger,* 947 A.2d 739 (Pa.Super.2008), which stated:

I believe it will be better for the practice of law and the business of the courts for these policy decisions to be made by the Pennsylvania Supreme Court upon recommendation of the Civil Procedural Rules Committee rather than by the appellate courts, one at a time, as they come up. That is why I

██ ¶ 8 We believe that Judge Griffith reached the appropriate resolution of this difficult problem and hold today that it is a matter of discretion for the trial court to decide whether to permit the withdrawal of a "stipulation" under Pa.R.C.P. 1311.1. The trial judge should consider the reason for the withdrawal and whether there would be any substantial prejudice to the defendant.[7] In this case, we agree with Judge Griffith that his continuation of the case to allow the defense to fully prepare the case eliminated any substantial prejudice and affirm his decision.

¶ 9 As Judge Griffith noted, the Rule is silent on withdrawal. While it does not specifically permit withdrawal, neither does it prohibit it. Therefore, Judge Griffith was also correct in noting that analogous principles regarding the withdrawal of stipulations would apply.

¶ 10 However, as Judge Griffith also pointed out, a Rule 1311.1 stipulation is of a somewhat different quality than other stipulations. It probably was not the best choice of words to call this a "stipulation." Most commonly a stipulation is understood to be a formal agreement between the parties.[8] Under Rule 1311.1 the defense does not have to agree to allow the plaintiff to proceed only on medical reports by limiting damages. The "stipulation" is, in reality, simply a decision unilaterally made by the plaintiff. As Judge Griffith phrased it, "There was no bargaining for or giving up of rights to obtain the stipulation. A judge has discretion when a request is made to withdraw a stipulation."[9] Moreover, pursuant to Rule 1311.1(d), if the defense wishes, the defense can call as a witness the doctor who provided the report.[10] This too upsets the notion that Rule 1311.1 represents typical notions of a stipulation. Therefore, despite being labeled a stipulation, it is not final that the case will only proceed on medical reports and damages will be limited to $25,000.

¶ 11 There are multiple reasons a plaintiff might want to withdraw a limitation of damages and have the doctor testify live or by deposition. Usually in the delay between filing such a stipulation and the trial, there will be further treatment and examination of the plaintiff. It may turn out that the injuries have gotten worse rather than better. Therefore, what was once considered to be a minor case now may be a major one requiring surgery or other treatment. That is one reason a plaintiff might wish to withdraw a Rule 1311.1 limitation of damages. In this case, there was a mistake because it was not noted that separate counsel on the subrogation claim for $8,200 of property damage also had a claim which would be charged against the $25,000 limit.

---

have commented on these issues here and invite the Rules Committee to take up the matter.
947 A.2d at 750.

While this invitation was given to the Civil Procedural Rules Committee many months ago, no action on any of the issues under the Rule has been taken. This, then, is one of the resulting piecemeal decisions left to the appellate courts.

7. We do not believe that withdrawal of the stipulation should be allowed where the trial court believes the Plaintiff is simply "sandbagging" the defendant.

8. "A voluntary agreement between opposing parties concerning some relevant point." Black's Law Dictionary, Eighth Edition, Thomson West, 2004. We note another definition would include "stipulation" as used in Rule 1311.1.

9. Trial Court Opinion, 12/19/07, at 3.

10. As noted in my concurrence in *Kopytin*, there are many more unanswered questions that arise if the defense calls the expert for cross-examination in a Rule 1311.1 situation.

¶ 12 Although Rule 1311.1 is a shortcut that can speed up trials—and prevent defendants from forcing plaintiffs to spend a great deal of money on expert testimony in minor cases to essentially preclude the appeal—it is not designed to eliminate a plaintiff's right to adequate compensation. Trial judges should have the discretion to allow a plaintiff to withdraw a limitation on damages for good cause *and* provided there is no substantial prejudice to the defendant. Accordingly, we hold that in this case there was no abuse of discretion or error in allowing the withdrawal of the "stipulation" under Pa.R.C.P. 1311.1.

**2. Was it error to permit the doctor who performed the examination of plaintiff for the defense to testify for plaintiff?**

 ¶ 13 Fissell's counsel retained a chiropractic expert, Jess P. Armine, R.N., D.C. His report corroborated *plaintiff's* position that Dolan had a permanent injury to her back. Doctor Armine testified and the trial court believed that after receiving the report, plaintiff's counsel, seeing that the report supported plaintiff's position, called Dr. Armine and asked him if he would testify as to the findings of his medical examination. Plaintiff's counsel had appeared at the examination and Dr. Armine knew he represented the patient. He never discussed the case with plaintiff's counsel, and only had contact with the office of plaintiff's counsel to make arrangements for the court appearance. Therefore, there was no discussion of any possible expert-client communication about the case.

¶ 14 Fissell's counsel claims that it was error to permit Dr. Armine to testify for plaintiff as he had initially retained the doctor. Once again, this appears to be an issue of first impression. Fissell points to no authority that prohibits this. While usually an expert initially contacted by one side will refuse to testify for the other side, and sometimes may be contractually bound to refuse, there is no evidence of that in this case. Dr. Armine "owns" his opinion and can decide whether and for whom he will testify.

¶ 15 No one can *compel* an expert to give his testimony for the side that did not employ him. This notion derives from at least as early as 1918 when our Supreme Court stated, regarding the testimony of an expert witness:

> But the private citizen has no more right to compel a citizen to give up the product of his brain that he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained.

*Pennsylvania Co. for Insurances on Lives & Granting Annuities v. City of Philadelphia*, 262 Pa. 439, 105 A. 630 (1918).

¶ 16 The idea that an expert cannot be compelled to give up the product of his or her brain has been sustained throughout the years, in a variety of circumstances. *See Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961) (defendant not allowed to call plaintiff expert as its own witness); *Columbia Gas Transmission Corp. v. Piper*, 150 Pa.Cmwlth. 404, 615 A.2d 979 (1992) (party may not use expert report of another party); *Jistarri v. Nappi*, 378 Pa.Super. 583, 549 A.2d 210 (1988) (defendant doctor could not be compelled to testify against other defendants); *Spino v. John S. Tilley Ladder Co.*, 448 Pa.Super. 327, 671 A.2d 726 (1996) *aff'd* 548 Pa. 286, 696 A.2d 1169 (1997) (party may not subpoena expert report of another party).

¶ 17 However, the case law also indicates that if the doctor is willing to testify as to what he found after conducting an "independent medical examination" for the defense, he is free to do so. In *Spino*,

while denying the right of a plaintiff to subpoena a physician retained by the defendant, this Court said:

> The trial court in the instant case did not prohibit Dr. Toland from testifying, if he so desired, for [plaintiffs]. Rather, the court simply precluded appellants from compelling Dr. Toland to provide an expert opinion. That was not error and provides no basis for the award of a new trial.

*Id.* at 739.

¶ 18 Fissell argues that *Spino* is vague in that it does not address the method by which an opponent may contact an expert originally retained but who will not be called to testify. To that end, Fissell believes *Spino* must be read in conjunction with Pa.R.C.P. 4003.5.

¶ 19 Rule 4003.5(a)(3) prevents a party from discovering facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation of trial and who is not expected to be called as a witness at trial. However, the rule specifically exempts medical experts from this prohibition and also refers to Rule 4010(b) which provides methods to obtain a medical report in the event the medical provider fails or refuses to issue a report.

¶ 20 We note as well that Rules 4003.5 and 4010 address issues of discovery and not testimony. Fissell has not pointed to any rule that specifically addresses the issue at hand and we have not found such a rule either. Because Rules 4003.5 and 4010 do not address the issue of testimony and exempt medical testimony from the prohibition of an opponent's contact, we will not apply those rules to the present situation.

¶ 21 The record shows that there was no privileged information used by Dr. Ar-

11. We note that it is impermissible to contract

mine. If counsel retains an expert and does not contract to preclude the expert from testifying for the opposing side, he or she takes the chance that the report will be unfavorable and the other side will use it.[11] After all, it is supposed to be an "independent" medical examination, not just one that supports the side of the person retaining the expert.

**3. Was it error to refuse a mistrial because of a passing reference to insurance?**

 ¶ 22 During Dr. Armine's direct examination regarding his qualifications, he said that he performed independent medical examinations. Then the following exchange took place:

Q. You mentioned independent medical or independent chiropractic examination. Can you tell the jury what that is?

A. Well, what an independent medical or independent chiropractic examination is very simply is if you were in an accident or had had an incident and generally speaking when the insurance carrier . . .

N.T. Trial, 8/29/07 at 11

¶ 23 There was then an objection, and after it was overruled, Dr. Armine continued:

Q. Go ahead, Doctor.

A. Generally, somebody may say, Gee, we don't know if this person is still injured. And instead of just performing a record review, they will ask you to go to an independent doctor to have an examination performed in order to determine what your particular clinical condition is. That examination would include taking of the history, review of whatever available records are there. During a physical examination and then

an expert to deliver only a favorable report.

answering the questions put forth. You know, usually, is the person still injured? Are they at maximum medical improvement? Do they need further care? If so, what type of care and so forth.

*Id.* at 12.

There was no further mention of insurance afterwards by the Doctor or by counsel.

¶ 24 While it is true that the general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial and justifies grant of a mistrial, *Carpinet v. Mitchell,* 853 A.2d 366 (Pa.Super.2004), it is also true the mere mention of the word insurance by a witness does not necessitate a new trial. *Dolan v. Carrier Corp.,* 424 Pa.Super. 615, 623 A.2d 850 (1993). Further, while "a gratuitous reference to personal liability insurance in personal injury cases is grounds for a mistrial, we have never said that the mention of insurance, per se, like dynamite with a live fuse, will blow up the case." *O'Donnell v. Bachelor,* 429 Pa. 498, 240 A.2d 484, 487 (1968). Thus, we must examine the mention of insurance in the totality of the circumstances.

¶ 25 We first note that while Fissell objected to the mention of insurance, there is no indication that a mistrial was requested. The discussion regarding the objection was held off the record, so we do not know what transpired other than that the objection was overruled and no instruction was given. We might assume that the lack of instruction was at Fissell's request, not wanting to highlight the fact of insurance.

¶ 26 Fissell does not appear to claim that the mention of insurance, by itself, is sufficient to grant a new trial. Indeed, given that there appears to have been no

contemporaneous request for a mistrial, it appears that Fissell was not convinced, at that time, that the brief mention of insurance was particularly prejudicial.[12] Rather, Fissell argues a collective prejudice, coupling the mention of insurance with two instances of the jury being informed that Dr. Armine was originally hired by Fissell.

¶ 27 Simply put, it appears to us that the one time mention of insurance, simply in the context of defining "independent medical examination," pales next to the fact that Fissell apparently rejected the medical opinion that was solicited by the defense.

¶ 28 While it certainly would have been preferable if there had been no mention of insurance, our review of the evidence as a whole, taken along with the fact that no mistrial was requested at the time, and the fact that the mention was seemingly inadvertent and was not in any way exploited by Dolan, leads us to conclude that the brief mention of insurance did not so pollute the case as render the trial unfair.

### 4. Was the verdict excessive?

¶ 29 Dolan's testimony supported the verdict. She testified that her symptoms have never gone away, and it is a chronic condition. Dr. Armine's diagnosis was a chronic sprain syndrome from the accident. The jury heard that Dolan endured pain daily, had limitations on her daily activities, and had a life expectancy of 41.6 more years. We agree with Judge Griffith that "The award is neither gross nor excessive in light of Plaintiff's injuries; the losses for which Plaintiff has been compensated are attributable to the injuries that she suffered in the collision with Fissell." Trial Court Opinion, 12/19/07 at 9–10.

---

**12.** Normally we would not comment on the lack of request for a mistrial in the denial of an objection. However, because case law specifically mentions mistrial as a remedy for this type of error, *see Carpinet, supra,* we believe the comment is appropriate.

**5. Was the verdict against the weight of the evidence?**

¶ 30 The argument of defense counsel misstates the evidence. It is only by just considering Fissell's testimony and ignoring that of Dolan and the driver of the car in front of Dolan that one could reach that conclusion. Dolan testified that she slowed for traffic, heard the screeching of brakes, and got hit from behind by Fissell with such force that she was driven into the car in front of her. We do not find that the verdict was against the weight of the evidence.

¶ 31 Judgment affirmed.