# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liokareas Construction Company, Inc.   :
    :
    v.     : No. 1087 C.D. 2020
    : ARGUED:  October 21, 2021
West Greene School District, URS   :
Corporation, AECOM, as successor   :
in interest to URS Corporation, The   :
Hayes Design Group-Architects, Inc.,   :
and ACA Engineering   :
    :
Appeal of: West Greene School District   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
          HONORABLE MICHAEL H. WOJCIK, Judge[2]
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED:  June 29, 2022**


Appellant, West Greene School District, appeals from an order of the Court of Common Pleas of Greene County denying the School District's exceptions to the Special Discovery Master's decision on the motion to compel documents filed by Appellee, Liokareas Construction Company, Inc.  This matter originated with the School District's plan to build a new school on a site with a large hillside necessitating a massive retaining wall.  Liokareas served as the general contractor and the subcontractors (Project Participants) included URS Corporation (URS or

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] This case was argued before a panel of the Court that included Judge Crompton.  Judge Crompton's service with this Court ended on January 2, 2022, before the Court reached a decision in this matter.  Accordingly, Judge Wojcik was substituted for Judge Crompton as a panel member in this matter and considered the matter as submitted on the briefs.

Construction Manager),[3] The Hayes Design Group-Architects, Inc. (HDG or Architect), and ACA Engineering (ACA or Engineer).[4]  Following the collapse of the wall and the initiation of litigation, the ongoing discovery dispute presently before us ensued.

In *Liokareas Construction Company, Inc. v. West Greene School District* (Pa. Cmwlth., No. 1087 C.D. 2020, filed January 20, 2022) (*Liokareas I*), we concluded that the trial court's order ruling on the applicability of claims of evidentiary privilege was immediately appealable as a collateral order under Pennsylvania Rule of Appellate Procedure 313(b).  In addition, we determined that the report of Garvin Boward Beitko Engineering, Inc. (GBBE Report), prepared at the School District's request as a review of the retaining wall design, was not protected from disclosure under Pennsylvania Rule of Civil Procedure 4003.5 (relating to discovery of expert testimony and trial preparation material).[5]  Accordingly, we affirmed the trial court's denial of Exceptions b, c, d, and j pertaining to the GBBE Report.  However, we determined that we were unable to ascertain whether the trial court erred in denying the remainder of the exceptions without access to the documents at issue.  Consequently, we remanded the matter to the trial court with directions to remit under seal the documents pertaining to the remaining exceptions that were considered *in camera*.  Having now received and

---

[3] AECOM is the successor in interest to URS.

[4] The Project Participants were precluded from participating at oral argument for failure to file briefs.

[5] We agreed that the School District's distribution of the GBBE Report to the Project Participants significantly increased the likelihood that Liokareas would obtain it, which ultimately occurred.  Accordingly, we determined that the claim of privilege was effectively destroyed upon distribution of the report, and, therefore, moot. *Liokareas I*, slip op. at 7 and 9.

2

reviewed the relevant documents *in camera*,[6] we affirm the denial of Exceptions a, e, f, g, h, i, k, and l.

The relevant background is as follows. The School District built a new elementary school next to preexisting middle and high schools. The rear of the new school included plans for a massive retaining wall approximately 760 feet in length and 35 feet in height at its tallest point. After a substantial portion of the wall collapsed, the School District effectively removed Liokareas from the project and refused to make additional payments. Liokareas filed a November 2014 praecipe for a writ of summons against the School District. In January 2016, Liokareas filed a second amended complaint adding the Project Participants and asserting four counts: (1) a breach of contract claim against the School District; (2) claims against the School District under the Commonwealth Procurement Code;[7] (3) intentional/fraudulent misrepresentation claims against the School District and all other defendants; and (4) negligent misrepresentation claims against the School District and all other defendants.

In April 2017, the School District filed a motion for protective order averring that any communication during the project in which the School District, its legal counsel, and the Project Participants participated should not be produced in discovery because such communication is subject to the attorney-client privilege and the attorney work-product doctrine. As a result, the School District refused to produce documents that were sent to, copied to, received from, or otherwise routed

---

[6] By order dated February 17, 2022, the trial court provided this Court with a sealed envelope containing two thumb drives with the confidential communications that were reviewed *in camera* below to determine the applicability of evidentiary privilege.

[7] 62 Pa.C.S. §§ 101-2311.

3

through any attorney from Peacock Keller, LLP, while work on the project was ongoing. Liokareas opposed the motion, arguing that no privilege applied.

Upon consideration of a privilege log indicating a large number of documents at issue, the trial court (1) appointed the Master to determine the application of privilege to documents and emails; and (2) afforded the Master discretion to rule upon all discovery disputes and to establish any procedures for consideration of motions, including the *in-camera* review of documents. (Dec. 28, 2017 Order at 1; Reproduced Record "R.R." at 366a.) In September 2018, Liokareas submitted its first motion to compel documents to the Master.[8]

Subsequently, Liokareas and the School District submitted a smaller set of representative samples from the privilege logs employing five categories:[9] (1) communications exchanged among School District representatives (no attorney); (2) communications exchanged among School District representatives and third parties (i.e., Project Participants, etc.) (no attorney); (3) communications exchanged among School District representatives and third parties (attorney copied only or among counsel for the multiple parties); (4) communications among the School District's counsel and third parties, not for the rendition of legal advice; and (5) routine construction project communications containing factual/scientific information based on observations.

In September 2019, Liokareas filed a second motion to compel documents contending that the School District failed to produce all of the documents

---

[8] The Project Participants took no position in the discovery dispute.

[9] The parties agreed upon five categories for document submission in order to facilitate the Master's *in camera* review. The categories are set forth in Liokareas' first motion to compel documents. (Liokareas' Sept. 18, 2018 Mot. to Compel Documents at 7-13; Suppl. Reproduced Record "S.R.R." at 61b-67b.) The School District explained the origin of the parties' agreement in one of its briefs. (Sch. Dist.'s Feb. 18, 2020 Br. in Support of Exceptions at 6; S.R.R. at 9b.)

requested in accordance with the Master's preliminary report. In December 2019, the Master issued his final decision concluding that most of the documents at issue were not privileged. The Master employed the following test when ascertaining privilege:

> a. Does the communication or document contain legal opinions or advice?
>
> b. Does the communication or document seek an opinion of law, legal services or assistance in a legal matter?
>
> c. Was the communication or document prepared for the purpose of providing information concerning the design, construction, contract administration as defined by [the School District's contracts with the Construction Manager and Architect] or other typical services associated with the construction of the elementary school that is the subject of this lawsuit?
>
> d. Is there sufficient record evidence to bring the communications at issue within the narrow confines of the asserted privilege?
>
> e. Has there been a waiver of privilege by disclosure to a third party?

(Master's Dec. 4, 2019 Decision, Finding of Fact "F.F." No. 8.)

The School District filed exceptions to the Master's decision, which the trial court denied. On appeal, we affirmed the trial court's denial of the exceptions pertaining to the GBBE Report but remanded for the remission of documents pertinent to the remaining exceptions.

The disputed findings of fact upon which the School District based its remaining exceptions are as follows:

> 9. Pursuant to [Section 3.3.9 of] the contract between [the Construction Manager] and [the School District] . . . [,] "the Construction Manager shall endeavor

5

to obtain satisfactory performance from each of the Multiple Prime Contractors. The Construction Manager shall recommend courses of action to the [School District] when requirements of a Contract are not being fulfilled." Thus, [the Construction Manager] was not an agent of the attorney, and was not acting as an advisor in legal matters. It was performing its contractual duties as a construction manager. This was also true of [the Architect] pursuant to its contract with [the School District]. (*See* AIA Document B101-2007 Sections 3.6.1.2 and 3.6.2.1 in particular among other provisions.)[10]

....

15. Pursuant to [*Bousamra v. Excela Health*, 210 A.3d 967, 977 (Pa. 2019)], a potential adversarial position existed between [the School District] [and the Project Participants]. These entities are third parties and even if the communication incidentally facilitated the lawyer's ability to provide legal advice, any communication including [them] is discoverable.

16. After *in camera* review, the following documents are deemed either privileged or not privileged: [A list of 159 documents followed, with the majority designated as not privileged.[11]]

(F.F. Nos. 9, 15, and 16) (footnotes added).

The remaining exceptions at issue provide:

---

[10] In pertinent part, Section 3.6.1.2 provides that "[t]he Architect shall advise and consult with the [School District] during the Construction Phase Services . . . ." (Nov. 21, 2019 Liokareas' Br. on Exceptions at 3; S.R.R. at 229b.) Section 3.6.2.1, in pertinent part, provides:

On the basis of the site visits, the Architect shall keep the [School District] reasonably informed about the progress and quality of the portion of the Work completed, and report to the [School District] (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor; (2) defects and deficiencies observed in the Work . . . .

(*Id.*)

[11] There was no cross appeal in this matter.

6

a. In Finding No. 9, that [the Construction Manager] and [the Architect], based on their respective contracts with [the School District], and as agents of [the School District], were not facilitating the provision of legal services by [the School District's] attorney[.]

. . . .

e. In Finding No. 15, in misapplying the new work-product rule (disclosure to adversary) pursuant to [*Bousamra*] . . . to the attorney-client privilege evaluation of third-party waiver.

f. In addition, in Finding No. 15, applying the "potential adversarial position" analysis broadly to cover any communication throughout the entire project without regard to when any "potential adversarial position" allegedly arose.

g. In addition, in Finding No. 15, in concluding that a "potential adversarial position" existed between [the School District] [and the Project Participants].

h. In addition, in Finding No. 15, in concluding that [the Project Participants] were third parties not subject to the attorney-client privilege.

i. In addition, in Finding No. 16, in determining the attorney-client privilege was waived based on third[-]party presence to the communication.

. . . .

k. In determining that [the Project Participants] were not privileged agents of [the School District].

l. In determining that [the School District's] communication with [the Project Participants] was not for the purpose of securing either an opinion of law, legal services or assistance in a legal matter.

(Exceptions a, e, f, g, h, i, k, and l at 2-3; R.R. at 377a-78a.)

On review,[12] the only issue before us is whether the School District's claims of attorney-client privilege were waived based on the presence of the Project Participants to communications involving the School District, its attorney, and the Project Participants.[13]

The four elements required to invoke the attorney-client privilege are as follows:

> (1) that the asserted holder of the privilege is or sought to become a client;
>
> (2) that the person to whom the communication was made is a member of the bar of a court, or his or her subordinate;
>
> (3) that the communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter; and
>
> (4) that the claimed privilege has not been waived by the client.

*Twp. of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 473 (Pa. Cmwlth. 2018) (citation omitted). "The party asserting the privilege has the initial burden to

---

[12] Application of the attorney-client privilege is a question of law over which we exercise plenary review. *Bousamra*, 201 A.3d at 973.

[13] The School District also asserts that the trial court erred in denying the exceptions without reviewing the claimed privileged documents to determine whether their purpose was for legal services or assistance in a legal matter. There is no indication that the trial court failed to conduct an appropriate review. Relying upon what it characterized as the well-reasoned report of the Master, the trial court stated that it carefully reviewed the record and the exceptions, as well as the parties' respective arguments and briefs. (Sept. 28, 2020 Order at 1.) The briefs, including any exhibits attached thereto, may be found in the Supplemental Reproduced Record. (Sch. Dist.'s Feb. 18, 2020 Br. in Support of Exceptions, S.R.R. at 3b-24b and Liokareas's Br. in Opp'n to Exceptions, S.R.R. at 25b-277b.) Moreover, as we have now independently reviewed the documents, any error by the trial court is of no moment. Accordingly, we reject the School District's assertion.

8

prove that it was properly invoked, and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege." *Id*. at 474 (citation omitted).

"The attorney-client privilege has its basis in the confidential nature of the communication and the reason for the privilege ordinarily ceases to exist if confidentiality is destroyed by voluntary disclosure to a third person." *Bousamra*, 210 A.3d at 978 (citation omitted). Consequently, "any disclosure outside the magic circle is inconsistent with the privilege[.]" *Id*. (citation omitted). To that end, the general rule provides that "disclosure to a third party generally waives the attorney-client privilege." *Id*. at 977. However, "[t]he attorney-client privilege is not waived where a client allows disclosure to an agent assisting the attorney in giving legal advice to the client." *Id*. at 984. In ascertaining waiver, "the critical fact is that the third-party's presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *Id*. at 985. In any event, "the attorney-client privilege should be given the narrowest interpretation consistent with its purpose." *Red Vision Sys. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 62 (Pa. Super. 2015). In this regard, we believe that the communication must be one which is *intended* to facilitate the attorney's advice, not just one which ultimately may prove to be of some use to the attorney. In other words, the privilege is maintained only where disclosure to the third party is made "for the *purpose* of assisting [] counsel in providing legal advice to [the client]." *Bousamra*, 210 A.3d at 986 (Donohue, J. concurring) (emphasis added).

The School District argues that the exception to the general rule applies because the Project Participants' presence was indispensable to its attorney giving legal advice and facilitated the attorney's ability to render legal advice to its client.

9

Acknowledging that the Project Participants were independent contractors retained for purposes of overseeing the design and technical aspects of the building project and resolving any problems that arose, the School District asserts that they possessed the specialized knowledge and expertise that the School District's attorney relied upon in effectively communicating with its client. In support, the School District contends that its contracts with the Project Participants created agency relationships and that the Project Participants as agents provided the type of communication that was necessary for the School District and its attorney to address the legal disputes that arose. In other words, the School District alleges that its attorney formed a team with the Project Participants in order to address the contentious issues that ensued.

The School District's position is without merit. As an initial matter, none of the Project Participants retained Peacock Keller, LLP, as their attorney. (F.F. No. 5.) The law firm represented the School District, which asserted its own claims and/or cross claims against at least some of the Project Participants such that the law firm's involvement was adverse to the interests of the Project Participants. *See* Sch. Dist.'s Answer, New Matter, Countercl. and Cross-cl. to Liokareas' Second Am. Compl. at 46; R.R. at 159a (School District's Crossclaim against Construction Manager) and Construction Manager's Answer, New Matter and Cross-cl. to Liokareas' Second Am. Compl. at 33; R.R. at 224a (Construction Manager's Crossclaim against the School District and Architect).

Further, there is no evidence that the law firm requested the Project Participants assist it in providing legal services to the School District, let alone hired them as experts. Pennsylvania Rule of Civil Procedure 4003.5 only prevents a party from discovering facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or in preparation

10

of trial and who is not expected to be called as a witness. *Dolan v. Fissell*, 973 A.2d 1009, 1014 (Pa. Super. 2009). In accordance with the documents that this Court requested and reviewed *in camera*, the Project Participants' roles pursuant to their respective contracts involved the provision of information to the School District and consisted of routine business communications relative to the construction project that were non-legal in nature. In other words, their respective contracts provided for them to perform contractual duties pursuant to their contracts and they were fulfilling those contractual obligations in the respective communications. With respect to the Construction Manager in particular, the Master found that it "was not an agent of the attorney, and was not acting as an advisor in legal matters . . . [because] [i]t was performing its contractual duties as a construction manager." (F.F. No. 9.) These duties included recommending courses of action to the School District when the requirements of a contract were not being fulfilled. (*Id*.) Accordingly, the Project Participants were not acting as agents of the School District's attorney or acting as experts with regard to legal matters.

Moreover, the privilege only protects disclosures of communication; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Ford-Bey v. Prof'l Anesthesia Servs. of N. Am., LLC*, 229 A.3d 984, 992 (Pa. Super. 2020). In other words, a fact does not enter a non-discoverable sphere solely by virtue of its having been communicated to counsel. *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372 (Pa. Super. 2012); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005) (holding that documents cannot be protected from discovery solely by virtue of being routed through an attorney). As the Master reasoned:

> 1. [The Project Participants] are independent professionals contracting with the [School District] to

11

provide design and construction services. From the start of the . . . project[,] it was contemplated that the design and construction professionals would be providing information to [the School District] and its agents, including its attorneys, regarding the design and construction of the school. This would include providing information for scheduling, contractual payments, requests for information, change[-]order requests, resolution of issues concerning alleged and real deviation from specifications and the hundreds of other issues the [sic] arise in design and construction of a new facility. Communications of fact or opinions in these roles are not protected by attorney client privilege. Merely including the attorney(s) on the communication does not result in attorney client privilege status.

(F.F. No. 1.)

Further, the Master concluded that "even if the communication incidentally facilitated the lawyer's ability to provide legal advice, any communication including [the Project Participants] is discoverable." (F.F. No. 15.) He cited *Bousamra* in which our Supreme Court considered whether a hospital system waived the attorney-client privilege by forwarding a pre-litigation email from outside counsel to a public relations consultant hired to assist the hospital in managing the publicity surrounding the evaluation of claims regarding medically unnecessary procedures. The hospital's outside legal counsel sent an email with legal advice to the hospital's in-house general counsel, who then shared the email with his contact at the public relations firm. The email with outside counsel's legal advice was then distributed to other people at both the public relations firm and within the hospital. The hospital took the position that the public relations firm was a privileged agent that facilitated the procurement of legal advice between outside counsel and the hospital such that the emails were privileged. Our Supreme Court disagreed and held that the attorney-client privilege that applied to the email when

12

sent from outside counsel to the client was waived when the in-house counsel shared it with the public relations firm.

The *Bousamra* holding governs the present case. There is no indication that the Project Participants' presence was either indispensable to the attorney giving legal advice or was intended to facilitate the attorney's ability to give legal advice to the client. As Liokareas observed, the Project Participants were independent contractors "with written contracts describing their scope of work on the Project, which they were required to perform regardless of any anticipated litigation." (Liokareas' Br. at 21.) To the extent that any communication incidentally facilitated the attorney's ability to provide legal advice, we agree with the Master that such incidental assistance did not render the communication privileged. As Liokareas observed and as our review of the communications submitted *in camera* reflects, "[t]he communications were exchanged and disclosed in a cavalier manner inconsistent with any privilege or confidentiality, and in a manner that was likely to lead to, and did in fact lead to, the disclosure of many of the documents to [Liokareas]." *Id*.

Moreover, the School District's argument that the Master misapplied the potential adversarial position analysis to the attorney-client privilege doctrine is without merit. In *Bousamra*, the Supreme Court held that "the work product doctrine is waived when the work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." *Bousamra*, 210 A.3d at 978. While it is true that the above holding related to the attorney work-product doctrine and not the attorney-client privilege doctrine, the Master did not err in considering the nature of the relationship that the School District had with the Project Participants in determining that the

13

attorney-client privilege was waived. The standard for waiver of the attorney-client privilege is more expansive than that applied to the attorney work-product doctrine.[14] Hence, if disclosure to an adversary will waive the latter privilege, it surely will waive the former. Moreover, it was fundamental to the Master's conclusion of waiver that the Project Participants were not the School District's agents but instead third parties, in part because the Project Participants were in a potential adversarial position with the School District—any of them could have been found to be responsible for the wall collapse rather than, or jointly with, Liokareas.

After reviewing the documents at issue, we agree with the analysis of the Master. Accordingly, for the foregoing reasons, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[14] Our Supreme Court held that "disclosure to a third party generally waives the attorney-client privilege, whereas the same cannot be said for application of the work product doctrine because disclosure does not always undermine its purpose." *Bousamra*, 210 A.3d. at 977-78 (footnote omitted). "The purpose of the work product doctrine is to protect the mental impressions and process of an attorney acting on behalf of a client[.]" *Id*. at 976. The cornerstone of the attorney-client privilege is confidentiality. *Id*. at 977.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liokareas Construction Company, Inc.   :
  :
         v.   : No. 1087 C.D. 2020
  :
West Greene School District, URS   :
Corporation, AECOM, as successor   :
in interest to URS Corporation, The   :
Hayes Design Group-Architects, Inc.,   :
and ACA Engineering   :
  :
Appeal of: West Greene School District   :

# O R D E R

AND NOW, this 29th day of June 2022, the order of the Court of Common Pleas of Greene County is hereby AFFIRMED as to the denial of Exceptions a, e, f, g, h, i, k, and l.

Jurisdiction is now relinquished.

---
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita